# EXHIBIT 4

## DEPARTMENT OF HEALTH AND HUMAN SERVICES

## ASSISTANCE LISTING 93.558 TEMPORARY ASSISTANCE FOR NEEDY FAMILIES

## I.    PROGRAM OBJECTIVES

The objectives of the state and tribal Temporary Assistance for Needy Families (TANF) programs are to provide time-limited assistance to needy families with children so that the children can be cared for in their own homes or in the homes of relatives; to end dependence of needy parents on government benefits by promoting job preparation, work, and marriage; to prevent and reduce out-of-wedlock pregnancies, including establishing prevention and reduction goals; and to encourage the formation and maintenance of two-parent families.

## II.    PROGRAM PROCEDURES

### A.    Overview

The Administration for Children and Families (ACF), a component of the Department of Health and Human Services (HHS), administers the TANF program on behalf of the federal government. To be eligible for the TANF block grant, a state (including the District of Columbia, the Commonwealth of Puerto Rico, the US Virgin Islands, Guam, and American Samoa) must periodically submit a state plan containing specified information and assurances.

1.    *States*

Following ACF review of the state plan and determination that it is complete, ACF awards the basic "State Family Assistance Grant" (SFAG) to the state using a formula allocation derived from funding levels under TANF's predecessor programs. The SFAG is a fixed amount to the state subject to reductions based on any penalties assessed. In addition, SFAG amounts will be adjusted for any federally recognized Indian tribes within the state that operate separate tribal TANF programs. States have significant flexibility in designing programs and determining eligibility requirements within broad federal parameters. While states have flexibility and discretion, there are provisions to ensure accountability for results, including requirements for reporting data on expenditures and individuals receiving benefits under the program, and monetary penalties for failure to meet programmatic requirements such as work participation requirements.

The federal TANF block grant program also has an annual cost-sharing requirement, known as maintenance-of-effort (MOE). A state must spend each fiscal year at least 80 percent of its historic state expenditures to provide benefits and services to eligible clientele. If the state meets both its required minimum overall ("all-family") and two-parent work participation rates for a federal fiscal year (FFY), then the required MOE spending level decreases to 75 percent of its

FFY 1994 historic state expenditures. "Historic state expenditures" means the state's FFY 1994 share of expenditures in the former Aid to Families with Dependent Children (AFDC), Emergency Assistance, AFDC-Related Child Care, Transitional Child Care, At-Risk Child Care, and JOBS programs. States may not use more than 15 percent of the total amount of countable expenditures for the fiscal year for administrative activities.

2.    *Tribes*

Tribal Family Assistance Plans (TFAP) are developed for a three-year period and submitted to ACF for review and approval. The Tribal Family Assistance Grant (TFAG) is derived from an amount equal to the federal share of expenditures, other than child care costs, by the state or states under the former AFDC, EA, and JOBS programs for FFY 1994 for all American Indian families residing in the service area identified in the TFAP. The TFAG is a fixed amount, subject to reductions based on any penalties assessed. As long as the minimum requirements are met, Indian tribes (tribes) have significant flexibility in designing programs and determining eligibility requirements and may use the award to provide cash or non-cash assistance, including direct services, and for administrative activities.

As also stated in IV, "Other Information - Tribal TANF recipients under a Pub. L. No. 102-477 Demonstration Project (477)," audits of Indian tribal governments with Tribal TANF in their approved 477 plan must follow the guidance in the 477 Cluster found in the Department of the Interior's section of Part 4 for this Supplement.

**B.    Funding**

1.    *States*

States have options for how to expend federal funds and state MOE funds. Certain statutory and regulatory requirements apply depending on whether the source of the funding for a service or benefit is federal funds alone, state MOE funds, or a combination of the two. For this reason, this supplement explains requirements based on how the state reports expenditures for a given service or benefit.

a.    *Federal Only* – A state should report an expenditure as "federal only" when it uses only federal funds, without including any MOE funds.

b.    *Commingled Federal/State* – A state should report an expenditure as "commingled" when it uses both federal award and MOE funds for the benefit or service. Commingled funding of a service or benefit means that the expenditure is subject to all federal funding restrictions, TANF requirements, and MOE limitations, or the most restrictive of these if they conflict.

    c.    *Segregated State* – A state should report an expenditure as "segregated state" if it uses MOE funds in the TANF program operated by the state and uses no federal funds for the benefit or service.

    d.    *Separate State Program* – A state should report an expenditure as funded by a "separate state program" if it reports state expenditures as MOE as part of a program, operated outside of the TANF program operated by the state.

Federal funds and MOE funds must both be used for "expenditures." A definition of the term "expenditure" is found in 45 CFR section 260.30. In addition, 45 CFR section 260.33 explains the circumstances under which certain state tax relief provisions would count as expenditures.

2.    *Tribes*

Similar to states, tribes have options for how to expend federal funds and, where applicable, state MOE funds. Certain statutory and regulatory requirements apply depending on whether the source of the funding for a service, or benefit, is federal funds alone, state MOE funds, or a combination of the two. For this reason, throughout this supplement, we explain requirements based on how the tribe reports expenditures for a given service or benefit.

    a.    *Federal Only* – A tribe should report an expenditure as "federal only" when it uses only federal funds, without including any state-donated MOE funds or tribal funds that are expended in the TANF program operated by the tribe.

    b.    *Commingled Federal/State-donated MOE* – A tribe should report an expenditure as "commingled" when it uses both federal and state-donated MOE funds for the benefit or service. Commingled funding of a benefit or service means that the expenditure is subject to all federal funding restrictions and state MOE limitations, or the most restrictive of these if they conflict.

    c.    *Segregated Tribal* – A tribe should report an expenditure as "segregated tribal" if it uses state MOE funds expended separately in the TANF program operated by the tribe and uses no federal funds for the benefit or service. See IV., "Other Information," for guidance on state MOE expended by tribes.

## American Rescue Plan Act of 2021

On March 11, 2021, the president signed the American Rescue Plan Act of 2021 into law (Pub. L. No. 117-2). It establishes the Pandemic Emergency Assistance Fund (PEAF) in section 403(c) of the Social Security Act (the Act). The PEAF provides funding to states (which includes the District of Columbia), tribes administering a TANF program, and five US territories (Puerto

Rico, Guam, the Virgin Islands, American Samoa, and the Northern Mariana Islands) to assist needy families impacted by the Coronavirus Disease 2019 (COVID-19) pandemic.

**Source of Governing Requirements**

These programs are authorized under Title IV-A of the Act, as amended by the Personal Responsibility and Work Opportunity Reconciliation Act of 1996 (Pub. L. No. 104-193) and subsequent amendments thereto and are codified at 42 USC 601-619.

The governing regulations for states are those in 45 CFR parts 260–265. Regulations for tribal TANF are in 45 CFR Part 286.

All state and all tribal TANF programs are subject to the provisions in the HHS implementation of 2 CFR Part 200 at 45 CFR Part 75.

**Availability of Other Program Information**

TANF-ACF-PI-2007-08, dated November 28, 2007, on *Using Federal TANF and State Maintenance-of-Effort (MOE) Funds for Families in Areas Covered by a Federal or State Disaster Declaration* presents items to consider with respect to the current TANF program when addressing the needs of families affected by a federally or state-declared disaster. TANF-ACF-PI-2007-08 is available at https://www.acf.hhs.gov/ofa/resource/policy/pi-ofa/2007/200708/pi200708.

Other general program information regarding the state and tribal TANF programs is available from the Office of Family Assistance (OFA) website at https://www.acf.hhs.gov/ofa/programs.

TANF-ACF-PI-2021-02, dated April 9, 2021, *The Pandemic Emergency Assistance Fund* provides initial guidance to state, tribal, and territorial agencies administering the TANF program, and other eligible territories, regarding the newly established PEAF.


**III.    COMPLIANCE REQUIREMENTS**

In developing the audit procedures to test compliance with the requirements for this federal program, the auditor must determine, from the following summary (also included in Part 2, "Matrix of Compliance Requirements"), which of the 12 types of compliance requirements have been identified as subject to the audit (noted with a "Y" in the summary matrix below), and then determine which of the compliance requirements that are subject to the audit are likely to have a direct and material effect on the federal program at the auditee. For each such compliance requirement subject to the audit, the auditor must use Part 3 (which includes generic details about each compliance requirement other than Special Tests and Provisions) and this program supplement (which includes any program-specific requirements) to perform the audit. When a compliance requirement is shown in the summary below as "N," it has been identified as not being subject to the audit. Auditors are not expected to test requirements that have been noted with an "N." See the Safe Harbor Status Discussion in Part 1 for additional information.

| A | B | C | E | F | G | H | I | J | L | M | N |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Activities Allowed or Unallowed | Allowable Costs/Cost Principles | Cash Management | Eligibility | Equipment and Real Property Management | Matching, Level of Effort, Earmarking | Period Of Performance | Procurement and Suspension and Debarment | Program Income | Reporting | Subrecipient Monitoring | Special Tests and Provisions |
| Y | Y | N | Y | N | Y | N | N | N | Y | Y | Y |

## A.   Activities Allowed or Unallowed

This program refers to states; however, in some cases, subrecipients of states (e.g., local governments) may be responsible for compliance requirements that are referred to in this Supplement as "state." The auditor should adjust accordingly for the entity being audited (typical for all requirements).

1.   *States*

   a.   Federal Only

      (1)   Funds may be used for expenditures for activities that are not permissible under 42 USC 601, but for which the state was authorized to use Title IV-A or IV-F funds under prior law. The previously authorized activities must have been included in a state's approved state AFDC plan, JOBS plan, or Supportive Services plan, as in effect on September 30, 1995, or at the state's option, on August 21, 1996. Examples of such activities are authorized juvenile justice and foster care activities (42 USC 604(a)(2); 45 CFR section 263.11(a)(2)).

      (2)   A state may transfer up to 30 percent of its total of current fiscal year funds (not prior fiscal year funds carried into the current fiscal year) received under the SFAG to carry out programs under the Social Services Block Grant (Title XX) (Assistance Listing 93.667) and/or the Child Care and Development Block Grant (Assistance Listing 93.575). However, no more than 10 percent may be transferred to Title XX, and such amounts may be used only for programs or services to children or their families whose income is less than 200 percent of the poverty level. Neither TANF contingency funds under 42 USC 603(b) nor pandemic emergency assistance funds under 42 USC 603(c) (Pub. L. No. 117-2) may be transferred under this authority (42 USC 604(d)). The poverty guidelines are issued each year in the *Federal Register* and HHS

maintains a website that provides the poverty guidelines (https://aspe.hhs.gov/topics/poverty-economic-mobility/poverty-guidelines). When transferred, the funds are subject to the rules of the program to which they are transferred (within statutory restrictions) and should be audited under that program. Please refer to Part IV Item 1, "Transfers out of TANF."

b.   Federal Only and Commingled Federal/State

Funds may not be used to provide medical services other than pre-pregnancy family planning services (42 USC 608(a)(6)).

c.   Federal Only, Commingled Federal/State, Segregated State, Separate State Program

(1)   A state may use funds in any manner reasonably calculated to accomplish the purposes of the program, including providing low-income households with assistance in meeting home heating and cooling costs (42 USC 604(a)(1) and 45 CFR section 263.11(a)(1)). As specified in 42 USC 601 and 45 CFR section 260.20, the TANF program has the following purposes (Note: In the following sections of this program supplement, these are referenced as TANF purposes 1, 2, 3, and 4, respectively):

(a)   Provide assistance to needy families so that children may be cared for in their own homes or in the homes of relatives;

(b)   End dependence of needy parents on government benefits by promoting job preparation, work, and marriage;

(c)   Prevent and reduce the incidence of out-of-wedlock pregnancies and establish annual numerical goals for preventing and reducing the incidence of these pregnancies; and

(d)   Encourage the formation and maintenance of two-parent families.

(2)   A state may use funds for programs to prevent and reduce the number of out-of-wedlock pregnancies, including programs targeted to law enforcement officials, the educational system, and counseling services that provide education and training of women and men on the problem of statutory rape (42 USC 602(a)(1)(A)(v) and (vi)).

(3)     A state may use funds to make payments or provide job placement vouchers to state-approved public and private job placement agencies providing employment placement services to individuals receiving assistance under TANF (42 USC 604(f)).

(4)     A state may use funds to implement electronic benefits transfer system (42 USC 604(g)).

(5)     A state may use funds to carry out a program to fund individual development accounts (42 USC 604(h)(2); 45 CFR sections 263.20 through 263.23) established by individuals eligible to receive assistance under TANF (42 USC 604(h); 45 CFR Part 263, Subpart C).

(6)     A state may contract with charitable, religious, and private organizations to provide administrative and programmatic services and may provide beneficiaries of assistance with certificates, vouchers, or other forms of disbursement that are redeemable with such organization (42 USC 604a(b), 42 USC 604a(k), and 45 CFR section 260.34). However, funds provided directly to participating organizations may not be used for inherently religious activities, such as worship, religious instruction, or proselytization (42 USC 604a(j); 45 CFR section 260.34(c)).

d.     Prohibition on Use of Federal TANF and State MOE funds for Juvenile Justice Services

See IV, "Other Information," for area of risk of non-compliance for juvenile justice services.

2.     *Tribes*

a.     Federal Only

(1)     A tribe may use funds for expenditures for activities that are not permissible under 42 USC 601, but for which the state or tribe was authorized to use Title IV-A or IV-F funds under prior law. The previously authorized activities must have been included in a state's approved state AFDC plan, JOBS plan, or Supportive Services plan, as in effect on September 30, 1995, or at the state's option, on August 21, 1996. Examples of such activities are authorized juvenile justice and foster care activities (42 USC 604(a)(2); 45 CFR section 263.11(a)(2)). Use of such funds in the tribal TANF program is allowed if the geographic area of the tribal TANF program is within the state(s) having had an approved AFDC state plan(s) under Title IV-A that included these activities. If the tribe plans to exercise this option, these activities must be included in the approved tribal TFAP.

(2)     Tribes may not transfer any federal TANF funds to the Social Services Block Grant (Title XX) (Assistance Listing 93.667) or the Child Care and Development Block Grant (Assistance Listing 93.575). Funds may not be used to contribute to or subsidize non-TANF programs (42 USC 604(d); 45 CFR section 286.45 (b)).

b.    Federal Only, Commingled Federal/State-donated MOE, Segregated Tribal

(1)    A tribe may use funds in any manner reasonably calculated to achieve the purposes of the tribal TANF program, including providing low-income households with assistance in meeting home heating and cooling costs (42 USC 604(a)(1) and 45 CFR section 286.35(a)(1)). As specified in 42 USC 601 and 45 CFR section 286.35, the tribal TANF program has the following purposes (Note: In the following sections of this program supplement, these are referenced as TANF purposes 1, 2, 3, and 4, respectively):

(a)    Provide assistance to needy families so that children may be cared for in their own homes or in the homes of relatives;

(b)    End dependence of needy parents on government benefits by promoting job preparation, work, and marriage;

(c)    Prevent and reduce the incidence of out-of-wedlock pregnancies and establish annual numerical goals for preventing and reducing the incidence of these pregnancies; and

(d)    Encourage the formation and maintenance of two-parent families.

(2)    A tribe may use funds for programs to prevent and reduce the number of out-of-wedlock pregnancies, including programs targeted to law enforcement officials, the educational system, and counseling services that provide education and training of women and men on the problem of statutory rape (42 USC 602(a)(1)(A)(v) and (vi)).

(3)    A tribe may use funds to make payments or provide job placement vouchers to tribe-approved public and private job placement agencies providing employment placement services to individuals receiving assistance under TANF (42 USC 604(f)).

(4)    A tribe may use funds to implement electronic benefits transfer system (42 USC 604(g)).

(5)      A tribe may use funds to carry out a program to fund individual development accounts (42 USC 604(h)(2)) established by individuals eligible to receive assistance under Tribal TANF (42 USC 604(h); 45 CFR section 286.40).

(6)      A tribe may contract with charitable, religious, and private organizations to provide administrative and programmatic services and may provide beneficiaries of assistance with certificates, vouchers, or other forms of disbursement which are redeemable with such organization (42 USC 604a(b) and 42 USC 604a(k)). However, tribes that operate their own TANF program under section 412 of the Act are not required to follow the Charitable Choice rules because the statutory provisions on Charitable Choice apply only to state and local governments (42 USC 604a(j); September 30, 2003, *Federal Register*, (68 FR 56450 and 56463)).

(7)      Tribal TANF recipients that expend federal funds on economic development activities must adhere to the instructions contained in the TANF Program Instruction, TANF-ACF-PI-2005-02, dated April 19, 2005, pertaining to economic development expenditures. This program instruction is available at https://www.acf.hhs.gov/ofa/resource/policy/pi-ofa/2005/pi2005-2htm (45 CFR section 286.35(a)(1)).

(8)      Unlike states, tribes are not prohibited from expending funds for medical expenses, if the expenditure is in the context of removing barriers to employment, training, or job-related education. However, funds cannot be used for general medical expenses for families. The expenditure of TANF funds is not intended to subsidize, contribute to, or supplant other available medical services or funding (i.e., Indian Health Service, Public Health Service, tribal health services, state, county, and local health services, or other services covered by Medicaid, Medicare, or private health insurance (42 USC 608(a)(6), 45 CFR section 286.45(b))).

3.     *Pandemic Emergency Assistance Fund (PEAF)*

    a.    All recipients

(1)      States, tribes, and territories (recipients) may use funds to provide certain non-recurrent, short-term (NRST) benefits (described below). Additionally, they may use funds for administrative costs (up to a 15 percent cap for states and territories and up to the negotiated cap for tribes).

(2)     For the purposes of PEAF, NRST benefits mean cash payments or other benefits that meet the regulatory definition (45 CFR section 260.31(b)(1)), but are limited to those that fall into the specific expenditure reporting category mentioned in the legislation (line 15 of the ACF-196R , the state financial reporting form for the TANF program). In other words, for this fund, NRST benefits, like all NRSTs under TANF, must: be designed to deal with a specific crisis situation or episode of need; not be intended to meet on-going needs; and not extend beyond four months; **and** (as explained in the instructions for reporting on line 15 of the ACF-196R) NRSTs paid for with PEAF funds: must only include expenditures such as emergency assistance and diversion payments, emergency housing and short-term homelessness assistance, emergency food aid, short-term utilities payments, burial assistance, clothing allowances, and back-to-school payments; and may **not** include tax credits, child care, transportation, or short-term education and training.

## E.    Eligibility

### 1.    Eligibility for Individuals

The state or tribal plan provides the specifics on the state or tribal area's definition of financially needy which the state or tribal area uses in determining eligibility. Whenever used in this section, "assistance," has the meaning in 45 CFR section 260.31(a) of the TANF regulations for states and 45 CFR section 286.10 of the tribal TANF regulations for federally recognized tribes operating an approved tribal TANF program. Plan and eligibility requirements must comply with the following federal requirements:

a.  *States*

(1)     Federal Only, Commingled Federal/State, Segregated State, and Separate State Program

(a)     Only a financially needy family that consists of, at a minimum, a minor child living with a parent or other caretaker relative, or a pregnant woman may receive TANF "assistance" or most MOE-funded benefits, services, or "assistance" regardless of the TANF purpose that the expenditure is reasonably calculated to accomplish (see III.A.1.c, "Activities Allowed or Unallowed – *Federal Only, Commingled Federal/State, Segregated State, Separate State Program*"). The child must be less than 18 years old, or, if a full-time student in a secondary school (or the equivalent level of vocational or technical training), less than 19 years old. (With respect to segregated or separate

state MOE funds, the state could use the definition for minor child given in section 419(2) of the Act or some other definition applicable in state law provided the state can articulate a rational basis for the age it chooses.) Financially "needy" means financially eligible according to the state's quantified income and resource (if applicable) criteria to receive the benefit (42 USC 602 and 602(a)(1)(B)(iii), 42 USC 609(a)(7)(B)(IV), and 42 USC 608(a)(1), 619(2); 45 CFR section 263.2(b)(2)). See III.G.2.1, "Matching, Level of Effort, Earmarking – Level of Effort – *Maintenance of Effort*," for the limited MOE pro-family exception to this requirement.

Note: A state may continue to provide federally funded (*Federal Only*) TANF "assistance" pursuant to 42 USC 604(a)(2) using the financial eligibility criteria contained in the state's approved AFDC, EA, JOBS, or Supportive Services plan as of September 30, 1995 (or at state option, as of August 21, 1996). A state may also continue this assistance notwithstanding the family composition requirement described above. (See III.A.1.a(1), "Activities Allowed or Unallowed.")

Only the financially "needy" are eligible for services, benefits, or "assistance" pursuant to TANF purpose 1 or 2 (see III.A.1.c., "Activities Allowed or Unallowed – *Federal Only, Commingled Federal/State, Segregated State, Separate State Program*") (42 USC 601(a)(1) and (2); 45 CFR sections 260.20(a) and (b)). Financially "needy" for TANF and MOE purposes means financial deprivation (i.e., lacking adequate income and resources). For example, a needy family or a needy parent is one who is financially eligible according to the state's quantified financial eligibility criteria (income and resource (if applicable) standards, April 12, 1999, *Federal Register* (64 FR 17825), 45 CFR section 263.2(b)(3)).

States may choose to use federal only TANF funds to provide benefits that do not constitute "assistance" to the non-needy pursuant to TANF purpose 3 or 4 only (see III.A.1.c, "Activities Allowed or Unallowed – *Federal Only, Commingled Federal/State, Segregated State, Separate State Program*") (42 USC 601(a)(3) and (4); 45 CFR sections 260.20(c) and (d)). States may also choose to use MOE funds to provide certain pro-family non-assistance benefits to the non-needy under TANF purpose 3 or 4 (see III.G.2.1, "Matching, Level of Effort, Earmarking

– Level of Effort – *Maintenance of Effort*," for the limited MOE pro-family exception to this requirement).

(b)     Qualified aliens, as defined in 8 USC 1641(b), are the only non-citizens who may receive a TANF public benefit, as defined in 8 USC 1611(c)), using federal TANF or commingled funds. Qualified aliens are lawful permanent residents, asylees, refugees, aliens paroled into the United States for at least one year, aliens whose deportations are being withheld, aliens granted conditional entry, Cuban/Haitian entrants, and certain battered aliens. Victims of severe forms of trafficking and certain family members are also eligible for federally funded or administered public benefits and services to the same extent as refugees.

Qualified aliens, nonimmigrants under the Immigration and Nationality Act, and individuals paroled into the United States for less than a year are the only noncitizen groups that are eligible for a non-commingled state or local MOE-funded public benefit, as defined in 8 USC 1621(c). Aliens that are not lawfully present in the United States may also be eligible for a state or local MOE-funded public benefit if the state has enacted a law after August 22, 1996, affirmatively providing for such eligibility (8 USC 1621(d)). All expenditures must meet all MOE requirements at 45 CFR Part 263, Subpart A. See III.G.2.1, "Matching, Level of Effort, Earmarking – Level of Effort – Maintenance of Effort."

States have the authority to decide whether or not to provide a federal TANF-funded public benefit or an MOE-funded public benefit to otherwise qualified aliens (including nonimmigrants and individuals paroled in the US for less than a year in the case of a non-commingled state or local MOE-funded public benefit) (8 USC 1612(b)(1) and 8 USC 1622(a)). If a state has decided not to help eligible aliens, then the state may not deny eligibility to refugees, asylees, aliens whose deportation has been withheld, Amerasians, and Cuban/Haitian entrants for a period of five years after the date of entry into the United States or the date asylum or withholding of deportation was granted. Also, such states may never deny eligibility to legal permanent residents who have worked 40 qualifying quarters after December 31, 1996, and have not received any federal means-tested public benefit during such period (once the five-year bar has expired for a qualified alien entering the United States on or after August 22, 1996, as

described in the next paragraph), or to aliens who are veterans, members of the military on active duty, and their spouses and unmarried dependents (8 USC 1612(b)(2)(A)(ii), 8 USC 1621(2)(B) and (C), 8 USC 1622(b)(1)-(3)). In other words, Congress did not give states the authority to deny eligibility to all eligible aliens. If the state elects to help all otherwise eligible aliens (as described in the preceding two paragraphs), then this paragraph does not apply.

Unless exempt under 8 USC 1613(b), qualified aliens, as defined in 8 USC 1641(b), entering the United States on or after August 22, 1996, are not eligible for a federal means-test public benefit (e.g., federally funded TANF assistance), as defined in 8 USC 1611(c), for a period of five years (8 USC 1613(a)). The five-year bar begins either on the date of the alien's entry into the United States as a qualified alien or on the date the alien residing in the United States becomes a qualified alien, whichever is later. If the alien entered the United States on or after August 22, 1996 but does not have an immigration status that qualifies (as defined in 8 USC 1641(b)), the individual is not eligible for a federal public benefit (as defined in 8 USC 1611(c)). The following qualified aliens are exempt from the five-year bar: refugees, asylees, aliens whose deportation is being withheld, Amerasians, Cuban/Haitian entrants, as well as veterans, members of the military on active duty, and their spouses and unmarried dependent children (8 USC 1613(b)).

If a noncash federal or state and local public benefit meets the specifications in the Attorney General's Final Order (Order No. 2353-2001 published January 16, 2001, at 66 FR 3613), then the state may provide the benefit regardless of immigration status (8 USC 1611 (b)(1)(D) and 8 USC 1621(b)(4)).

(2)    Federal Only and Commingled Federal/State

(a)    Any family that includes an adult or minor child head of household or a spouse of the head of household who has received assistance under any state program funded by federal TANF funds for 60 months (whether or not consecutive) is ineligible for additional federally funded TANF assistance. However, the state may extend assistance to a family on the basis of hardship, as defined by the state, or if a family member has been battered or subjected to

extreme cruelty. In determining the number of months for which the head of household or the spouse of the head of household has received assistance, the state must not count any month during which the adult received the assistance while living in Indian country or in an Alaskan Native Village and the most reliable data available with respect to that month (or a period including that month) indicate at least 50 percent of the adults living in Indian country or in the village were not employed (42 USC 608(a)(7); 45 CFR sections 264.1(a), (b), and (c)).

(See III.G.3, "Matching, Level of Effort, Earmarking – Earmarking," for testing the limits related to the number of exemptions.)

(b)     A state may not provide assistance to an individual who is under age 18, is unmarried, has a minor child at least twelve weeks old, and has not successfully completed high school or its equivalent unless the individual either participates in education activities directed toward attainment of a high school diploma or its equivalent, or participates in an alternative education or training program approved by the state (42 USC 608(a)(4); 45 CFR section 263.11(b)).

(c)     A state may not provide assistance to an unmarried individual under 18 caring for a child, if the minor parent and child are not residing with a parent, legal guardian, or other adult relative, unless one of the statutory exceptions applies (42 USC 608(a)(5)).

(d)     A state may not provide assistance for a minor child who has been or is expected to be absent from the home for a period of 45 consecutive days or, at the option of the state, such period of not less than 30 and not more than 180 consecutive days unless the state grants a good cause exception, as provided in its state plan (42 USC 608(a)(10)).

(e)     A state may not provide assistance for an individual who is a parent (or other caretaker relative) of a minor child who fails to notify the state agency of the absence of the minor child from the home within five days of the date that it becomes clear to that individual that the child will be absent for the specified period of time (42 USC 608(a)(10)(C)).

(f)     A state may not use funds to provide cash assistance to an individual during the ten-year period that begins on the date the individual is convicted in federal or state court of having made a fraudulent statement or representation with respect to place of residence in order to simultaneously receive assistance from two or more states under TANF, Title XIX, or the Food Stamp Act of 1977, or benefits in two or more states under the Supplemental Security Income program under Title XVI of the Act. If the President of the United States grants a pardon with respect to the conduct that was the subject of the conviction, this prohibition will not apply for any month beginning after the date of the pardon (42 USC 608(a)(8)).

(g)     A state may not provide assistance to any individual who is fleeing to avoid prosecution, or custody or confinement after conviction, for a felony or attempt to commit a felony (or in the state of New Jersey, a high misdemeanor), or who is violating a condition of probation or parole imposed under federal or state law (42 USC 608(a)(9)(A)).

(3)     Federal Only, Commingled Federal/State, Segregated State

(a)     A state shall require that, as a condition of providing assistance, a member of the family assign to the state the rights the family member may have for support from any other person. This assignment may not exceed the amount of assistance provided (42 USC 608(a)(3)).

(b)     An individual convicted under federal or state law of any offense which is classified as a felony and which involves the possession, use, or distribution of a controlled substance (as defined in the Controlled Substances Act (21 USC 802(6)) is ineligible for assistance if the conviction was based on conduct occurring after August 22, 1996. A state shall require each individual applying for TANF assistance to state in writing whether the individual or any member of their household has been convicted of such a felony involving a controlled substance. However, a state may by law enacted after August 22, 1996, exempt any or all individuals from this prohibition or limit the time period that this prohibition applies to any or all individuals (21 USC 862a).

(c)     If an individual in a family receiving assistance refuses to engage in required work, a state must reduce assistance to the family, at least pro rata, with respect to any period

during the month in which the individual so refuses or may terminate assistance. Any reduction or termination is subject to good cause or other exceptions as the state may establish (42 USC 607(e)(1); 45 CFR sections 261.13 and 261.14(a) and (b)). However, a state may not reduce or terminate assistance based on a refusal to work if the individual is a single custodial parent caring for a child who is less than 6 years of age if the individual can demonstrate the inability (as determined by the state) to obtain child care for one or more of the following reasons: (a) the unavailability of appropriate care within a reasonable distance of the individual's work or home;
(b) unavailability or unsuitability of informal child care; or
(c) unavailability of appropriate and affordable formal child care (42 USC 607(e)(2); 45 CFR sections 261.15(a), 261.56, and 261.57).

b.    Tribes: Federal Only, Commingled Federal/State-Donated MOE

Eligibility for tribal TANF is defined in the approved TFAP. See IV, "Other Information," for guidance on state MOE expended by tribes.

The approved TFAP includes the tribe's proposal for time limits for the receipt of TANF assistance, as well as the percentage of the caseload to be exempted from the time limit. These proposed time limits must be approved by ACF (45 CFR section 286.115).

**2.    Eligibility for the Pandemic Emergency Assistance Fund**

a.    The recipients of PEAF-funded NRSTs must be financially needy families with children but they do not necessarily have to be eligible for TANF cash assistance. A recipient has the flexibility to determine what needy means for each NRST and may wish to set a higher standard than it does for TANF cash assistance, such as aligning with SNAP or Medicaid income eligibility criteria.

b.    The Income Eligibility Verification System (IEVS) does apply to the PEAF, as it is funded under Title IV-A; however, tribes are not subject to the IEVS requirements.

**3.    Eligibility for Group of Individuals or Area of Service Delivery**

Not Applicable

**4.    Eligibility for Subrecipients**

Not Applicable

**G.     Matching, Level of Effort, Earmarking**

**1.      Matching**

Not Applicable

**2.      Level of Effort**

**2.1     Level of Effort – Maintenance of Effort**

See IV, "Other Information," for guidance on state MOE expended by tribes.

The following MOE provisions apply to any state funds that are counted towards the MOE for TANF, whether such state funds are expended as commingled federal/state, segregated state, or separate state program funds.  Note that MOE requirements do not apply to subrecipients.

a.      *State MOE* – Every fiscal year, a state must maintain an amount of "qualified state expenditures" (as defined in 42 USC 609(a)(7)(B) and 45 CFR section 263.2) for eligible families (as defined in 42 USC 609(a)(7)(B)(i)(IV) and 45 CFR section 263.2(b)) at least at the applicable percentage of the state's historic state expenditures. Therefore, all amounts claimed for or on behalf of eligible families, including amounts that result from state tax provisions, must be the result of expenditure (42 USC 609(a)(7)(A) and (B)(i)(I); 45 CFR sections 260.30 ("expenditure") and 260.33, 45 CFR section 75.2, and 45 CFR section 75.306). States may claim qualified expenditures for eligible family members who are citizens or aliens. However, the particular aliens for whom a state may claim qualified expenditures will depend on the state funds used to provide the benefit or service (see III.E.1.a.(2), "Eligibility – Eligibility for Individuals, *Federal Only, Commingled Federal/State, Segregated State, or Separate State Program*") and whether the benefit or service is a federal, state, or local public benefit (8 USC 1611, 1612(b), 1613, 1621-1622, and 1641(b)).

The applicable percentage for each fiscal year is 80 percent of the amount of non-federal funds the state spent in FY 1994 on AFDC or 75 percent if the state meets the TANF work participation rate requirements (42 USC 607(a)) for the fiscal year. This is termed "basic MOE" and the requirement is based on the FFY. Any MOE expenditures above this required amount are referred to as "excess MOE."

Except as provided in paragraph b, immediately below, qualified expenditures with respect to eligible families may come from all programs (i.e., the state's TANF program as well as programs separate from the state's TANF program). This requirement may be met through allowable state or local cash expenditures for goods and services, cash donations by non-governmental third parties (e.g., a non-profit organization, corporation, or other private party), or the value of third-party in-kind contributions. A state's records must show that all the costs are verifiable and meet all applicable requirements in 45 CFR sections 263.2 through 263.6. Third parties must be aware of and agree with the state's intentions and, accordingly, the state's records must include an agreement between the state and the third party permitting the state to count the expenditure toward its MOE requirement (42 USC 609(a)(7)(A) and 609(a)(7)(B)(i)(I); 45 CFR sections 263.1 and 263.2(e)).

Effective October 1, 2008 (i.e., FY 2009 awards), states may claim only *certain* pro-family non-assistance expenditures that are reasonably calculated to accomplish TANF purpose 3 or TANF purpose 4. These pro-family expenditures consist of the allowable healthy marriage promotion and responsible fatherhood non-assistance activities enumerated in Title IV-A of the Act, sections 403(a)(2)(A)(iii) and 403(a)(2)(C)(ii), unless a limitation, restriction, or prohibition under 45 CFR Part 263, Subpart A applies (45 CFR section 263.2(a)(4)(ii); TANF-ACF-PI-2008-10, dated October 23, 2008, available at https://www.acf.hhs.gov/ofa/programs/tanf/policy.

States may claim for MOE purposes the qualified pro-family healthy marriage and responsible fatherhood expenditures for *non-assistance* benefits and services provided to or on behalf of an individual or family, regardless of financial need or family composition. States must limit the provision of all other qualified MOE-funded assistance and non-assistance benefits to eligible families as defined at 45 CFR section 263.2(b), regardless of the TANF purpose that the expenditure is reasonably calculated to accomplish.

Section 409(a)(7)(B)(iv)(IV) of the Act prohibits states from counting toward their MOE requirement expenditures made as a condition of receiving federal funds, unless allowed under Title IV, part A of the Act.

If a state does not meet the basic MOE requirement, a penalty results. The penalty consists of a reduction of the state's federal

TANF award for the following fiscal year in the amount of the difference between the state's qualified expenditures and the state's basic MOE (42 USC 609(a)(7)(A) and 45 CFR section 263.8). If application of a penalty results in a reduction of federal TANF funding, the state is required in the immediately succeeding fiscal year to spend from state funds an amount equal to the total amount of the reduction, in addition to the otherwise required basic MOE. The additional funds must be spent in the TANF program, not under "separate state programs." Such expenditures may not be claimed toward MOE (42 USC 609(a)(12); 45 CFR sections 263.6(f) and 264.50).

b.      *Limitations on "Qualified State Expenditures"* – Expenditures under pre-existing programs, other than those that would have been previously authorized and allowable under the former AFDC, JOBS, Emergency Assistance, Child Care for AFDC recipients, At-Risk Child Care, or Transitional Child Programs may not count toward the state's MOE requirement for the current year except to the extent that the current year's expenditures with respect to eligible families exceed the expenditures made under the state or local program in FY 1995.

*Exception*: If the expenditures are for non-assistance pro-family activities as addressed in paragraph a., then current year expenditures are not limited to those made with respect to eligible families. If total current fiscal year expenditures for allowable pro-family activities within TANF purpose three or TANF purpose 4 exceed total state expenditures in the program during FY 1995, then the state may claim the excess toward the state's MOE requirement. Thus, to be considered as "exceeding" the FY 1995 level, the expenditures must be new or additional expenditures. (42 USC 609(a)(7)(B)(i)(II)(aa) and 45 CFR section 263.5). Additional information on application of the "new spending test" for new or additional expenditures may be found in TANF-ACF-PI-2016-04 (https://www.acf.hhs.gov/ofa/resource/tanf-acf-pi-2016-04).

In addition, expenditures by the state from amounts that originated from federal funds may not count toward meeting a MOE requirement even if the expenditures "qualify" (42 USC 609(a)(7)(B)(iv)(I)).

Except for child care expenditures, double-counting of expenditures to meet the basic MOE requirement is prohibited (42 USC 609(a)(7)(B)(iv)(II-IV); 45 CFR section 263.6). States may count state funds expended to meet the requirements of the Child Care Development Fund Matching Fund (Assistance Listing 93.596) as basic MOE expenditures, as long as such expenditures

meet the requirements of 42 USC 609(a)(7). The maximum amount of child care expenditures that a state may double-count under this provision is the state's Matching Fund MOE amount under Assistance Listing 93.596 (42 USC 609(a)(7)(B)(iv); 45 CFR sections 263.3 and 263.6).

Expenditures for educational services/activities for eligible families to increase self-sufficiency, job training, and work count if the activities or services are not generally available to other state residents without cost and without regard to their income (42 USC 609(a)(7)(B)(i)(I)(cc); 45 CFR section 263.4, TANF-ACF-PI-2005-01, dated April 14, 2005, at https://www.acf.hhs.gov/ofa/programs/tanf/policy).

Administrative costs in connection with the activities that correspond to the qualified expenditures may not exceed 15 percent of the total amount of countable expenditures for the fiscal year (42 USC 609(a)(7)(B)(i)(I)(dd); 45 CFR section 263.2(a)(5)).

The basic MOE requirement expressly does not count expenditures for services or activities that only fall under 42 USC 604 (a)(2) (see III.A.1.a(1), "Activities Allowed or Unallowed"). Such expenditures are not considered "qualified expenditures" (42 USC 609(a)(7)(B)(i)(I); 45 CFR section 263.2(a)(4)).

c.   *Contingency Fund MOE* – A state must spend more than 100 percent of its historic state expenditures for FY 1994 to keep any of the federal contingency funds it received (42 USC 603(b), and 45 CFR sections 264.72(a)(2) and 264.70 through 77). This is termed "Contingency Fund MOE." The Contingency Fund MOE requirement may be met only through qualified expenditures under the state's TANF program. Qualified expenditures consist of those defined and provided under 42 USC 609(a)(7)(B)(i) and 45 CFR sections 263.2 (a)(1),(a)(3) through (a)(5), and 263.2(b), but excludes those expenditures described in 42 USC 609(a)(7)(B)(i)(I)(bb) and 45 CFR section 263.2(a)(2); (42 USC 603(b)(6)(B)(ii)(I) and 609(a)(10)).

d.   *1108(b) Territorial Matching Fund MOE Requirement* – See IV, "Other Information," for guidance on the spending requirements applicable to the receipt of Matching Grant funds under section 1108(b) of the Act (section 1108(b)); (42 USC 1308(b)).

e.   *Prohibition on Use of Federal TANF and State MOE funds for Juvenile Justice Services* – See IV, "Other Information" for area of risk of non-compliance for juvenile justice services.

**2.2**    **Level of Effort – Supplement Not Supplant**

1.    *Pandemic Emergency Assistance Fund*

States, tribes and territories (recipients) may use funds to provide certain non-recurrent, short term (NRST) benefits (described in section A. 3. a. 2.). Additionally, they may use funds for administrative costs (up to a 15-percent cap for states and territories and up to the negotiated cap for tribes). All recipients must use funds to supplement, and not supplant, other federal, state, tribal, territorial, or local funds.  Note that the Supplement Not Supplant requirements do not apply to subrecipients.

**3.**    **Earmarking**

a.    *Federal Only and Commingled Federal/State*

A state may not spend more than 15 percent for administrative purposes, excluding expenditures for information technology and computerization needed for required tracking and monitoring, of the total combined amounts available under the SFAG, supplemental award for population increases, and contingency funds (42 USC 604(b)(1) and (2); 45 CFR sections 263.0 and 263.13).

b.    *Federal Only and Commingled Federal/State*

The average monthly number of families that include an adult or minor child head of household, or the spouse of the head of household, who has received assistance under any state program funded by federal TANF funds for more than 60 countable months (whether or not consecutive) may not exceed 20 percent of the average monthly number of all families to which the state provided assistance during the fiscal year or the immediately preceding fiscal year (but not both), as the state may elect. To make this determination for a fiscal year, the average monthly number of families with a head of household or spouse of a head of household who received assistance for more than 60 months would be divided by the average monthly number of families that received assistance in that fiscal year, or, if the state chooses, in the previous fiscal year (42 USC 608(a)(7)(C)(ii); 45 CFR sections 264.1(c) and (e)).

(See III.E.1, "Eligibility – Eligibility for Individuals," for related eligibility testing.)

c.    *Tribes: Federal Only and Commingled Federal/State-donated MOE*

The approved TFAP includes a negotiated administrative cost rate for that tribe for that particular year. As approved in the TFAP, no tribal TANF

recipient may expend more than 35 percent of the total combined federal TANF funds for administrative costs during the first year, 30 percent during the second year, and 25 percent for the third and all subsequent grant periods. The approved tribal administrative cost rate may be found in a letter of approval issued by the ACF/Division of Tribal Services and/or in the approved TFAP. The tribal administrative cost cap is determined by multiplying the TFAG by the negotiated administrative rate for the fiscal year being tested (45 CFR section 286.50).

d.    *Pandemic Emergency Assistance Fund*

Recipients may use funds for administrative costs, within limitations. For states (including the District of Columbia) and territories, the law provides a 15 percent cap on administrative expenditures. For tribes, the same cap will apply to administrative costs in the PEAF that a tribe negotiated for administrative costs in its approved tribal TANF plan.

Note that the Earmarking requirements do not apply to subrecipients.

Indirect costs may be applied to the federal TANF funds based on the indirect cost rate negotiated by the Bureau of Indian Affairs, the Department of Health and Human Services' Division of Cost Allocation, or another federal agency. However, indirect costs applied to TANF funding are subject to and included within the administrative cap limits (45 CFR section 286.55(d)).

**L.    Reporting**

*States/Tribes*:

**1.    Financial Reporting**

a.    *SF-270, Request for Advance or Reimbursement* – Not Applicable

b.    *SF-271, Outlay Report and Request for Reimbursement for Construction Programs* – Not Applicable

c.    *SF-425, Federal Financial Report* –Not Applicable.

d.    ACF-196T*, Tribal TANF Financial Report Form (OMB No. 0970-0345)* – Applicable to tribes; Not Applicable to states. This form is not applicable to tribes administering TANF programs under a Pub. L. No. 102-477 demonstration project. Beginning with the FY 2009 award, tribes must use this form to report TANF expenditures quarterly.

e.    ACF-196R*, TANF Financial Report (OMB No. 0970-0446)* – States are required to submit this report quarterly, beginning in FY 2015, in lieu of the SF-425*, Federal Financial Report* (financial status*)*. Each state files quarterly expenditure data on the state's use of federal TANF funds, state

TANF MOE expenditures, and state expenditures of MOE funds in separate state programs. If a state is expending federal TANF funds received in prior fiscal years, it must file a separate quarterly TANF Financial Report for each fiscal year that provides information on the expenditures of that year's TANF funds. This form must be used for reporting regular TANF funds and Contingency Fund expenditures. See TANF-ACF-PI-2014-02, available at https://acf.gov/ofa/policy-guidance/tanf-acf-pi-2014-02-omb-approved-form-acf-196r-state-tanf-financial-report-form, for more information.

f.      ACF-196-TR, *Territorial Financial Report* – Territories report their expenditures and other fiscal data in this report (45 CFR section 265.3(c)). The territories must report quarterly on their use of federal TANF funds, Territorial TANF MOE expenditures, expenditures of MOE funds in separate "state" programs, expenditures made as a result of receiving matching grant funds under 42 USC 1308(b), and expenditures made under the federal Adult Assistance programs (titles I, X, XIV, and XVI of the Act) (42 USC subchapters I, X, XIV, and XVI and 42 USC 1308(a)).

See IV, "Other Information," for additional guidance on territories' spending levels.

## 2.      Performance Reporting

a.      ACF-199, TANF Data Report (OMB No. 0970-0338) and ACF-343, Tribal TANF Data Report (OMB No. 0970-0215) (65 FR 8545, Appendix A, February 18, 2000)

One of the critical areas of this reporting is the work participation data, which serve as the basis for ACF to determine whether states and tribes have met the required work participation rates. A penalty may apply for failure to meet the required rates.

*State Work Participation Rates*

State agencies must meet or exceed their minimum annual work participation rates. The minimum work participation rates are 50 percent for the overall rate and 90 percent for the two-parent rate. A state's minimum work participation rate may be reduced by its caseload reduction credit. HHS may penalize the state by an amount of up to 21 percent of the SFAG for violation of this provision (42 USC 609(a)(4); 45 CFR section 262.1(a)(4)).

*Key Line Items* – The following ACF-199 (TANF Data Report) line items contain critical information for making the preceding determinations and for other program purposes. Compare the data entered on the file for the key line items below to the documentation in the case file for completeness, accuracy, and consistency:

1.       Section One – Family-Level Data
         Item 12        *Type of Family for Work Participation*
         Item 17        *Receives Subsidized Child Care*
         Item 28        *Is the TANF family exempt from the federal time
                        limit provisions*

2.       Section One – Person-Level Data
         Item 30        *Family Affiliation Code*
         Item 32        *Date of Birth*
         Item 38        *Relationship to Head-of-Household*
         Item 39        *Parents with a Minor Child*
         Item 44        *Number of months countable toward the federal
                        time limit*
         Item 48        *Work-Eligible Individual Indicator*
         Item 49        *Work Participation Status*

3.       Section One – Adult Work Participation Activities
         Items 50 – 62  *Work Participation Activities*
         Item 63        *Number of Deemed Core Hours for Overall Rate*
         Item 64        *Number of Deemed Core Hours for the Two-Parent
                        Rate*

4.       Section Three – Active Cases
         Item 8         *Total Number of Families*

*Tribal Work Participation Rates*

Tribal TANF agencies must meet or exceed their minimum annual work
participation rates. The minimum work participation rates are contained in
the respective tribal TANF plans. Tribal TANF agencies have the option
to negotiate and choose from among a number of work participation rates
(e.g., separate rates for one- and two-parent families or an "all-families
with parents" rate when one- and two-parent families are combined). HHS
may penalize the tribe by a maximum of 5 percent of the TFAG for the
first violation of this provision. The penalty increases by an additional 2
percent for each subsequent violation up to a maximum of 21 percent (42
USC 612(c) and 612(g)(2); 45 CFR sections 286.195(a)(3) and 286.205).

*Key Line Items* – The following ACF-343 (Tribal TANF Data Report) line
items contain critical information used in making a determination of a
tribe's Work Participation Rates.

1.       Review the tribe's TANF plan for a fiscal year to identify the type
         of family required to participate in work activities and the
         minimum number of hours per week that the adults and minor
         heads of household in the family must participate in work activities
         (45 CFR section 286.80). Compare the data entered on the file for

the key line items below to the documentation in the case file for completeness, accuracy, and consistency:

Item 30          *Family Affiliation*
Item 48          *Work Participation Status*
Items 49–62   *Adult Work Participation Activities*

b.       ACF 209, SSP-MOE Data Report *(OMB No. 0970-0338)* – This report is submitted quarterly beginning with the first quarter of FFY 2000.

*Key Line Items* – The following line items contain critical information:

1.       Section One – Family-Level Data
         Item 9          *Type of Family for Work Participation*
         Item 15         *Receives Subsidized Child Care*

2.       Section One – Person-Level Data
         Item 28         *Date of Birth*
         Item 34         *Relationship to Head-of-Household*
         Item 41         *Work-Eligible Individual Indicator*
         Item 42         *Work Participation Status*

3.       Section One – Adult Work Participation Activities
         Items 43 – 55  *Work Participation Activities*
         Item 56         *Number of Deemed Core Hours for Overall Rate*
         Item 57         *Number of Deemed Core Hours for the Two-Parent Rate*

4.       Section Three – Active Cases
         Item 3          *Total Number of SSP-MOE Families*

**3.      Special Reporting**

a.       ACF-204, Annual Report including the Annual Report on State Maintenance-of-Effort Programs *(OMB No. 0970-0248)* – Each state must file an annual report containing information on the TANF program and the state's MOE program(s) for that year, including strategies to implement the Family Violence Option, state diversion programs, and other program characteristics. Each state must complete the ACF-204 for each program for which the state has claimed basic MOE expenditures for the fiscal year. States may submit this electronically through the On-Line Data Collection  System.

*Key Line Items* – The following line items contain critical information.:

1.       *Program Name*

2.       *Description of Major Program Activities*

    3.      *Program Purpose(s)*

    4.      *Program Type*

    5.      *Total State MOE Expenditures*

    6.      *Number of Families Served with MOE Funds*

    7.      *Eligibility Criteria*

    8.      *Prior Program Authorization*

    9.      *Total Program Expenditures in FY 1995*

The total MOE expenditures reported in item 5 of the ACF-204 should equal the total MOE expenditures reported in line 24, columns (B) plus (C) of the 4th quarter ACF-196R *TANF Financial Report*; or line 17, column (B) of the ACF-196-TR, *Territorial Financial Report*.

b.    Each recipient must submit form ACF-196P (OMB No. 0970-0510) to report expenditures for PEAF within 90 days of the end of each FFY.

*Key Line Items* – The following line items contain critical information:

    1.      *Administrative Costs (listed as "Administration" on the form)*

    2.      *Non-Recurrent, Short-Term Benefits*

**4.      Special Reporting for Federal Funding Accountability and Transparency Act**

See Part 3.L for audit guidance.

**N.    Special Tests and Provisions**

Special Tests and Provisions one through five apply to a state's TANF program, not to a Tribal TANF program.

**1.      Child Support Non-Cooperation**

**Compliance Requirements** If the state agency responsible for administering the state plan approved under Title IV-D of the Act determines that an individual is not cooperating with the state in establishing paternity, or in establishing, modifying or enforcing a support order with respect to a child of the individual, and reports that information to the state agency responsible for TANF, the state TANF agency must (1) deduct an amount equal to not less than 25 percent from the TANF assistance that would otherwise be provided to the family of the individual, and (2) may deny the family any TANF assistance. HHS may penalize a state for up to 5 percent of the SFAG for

failure to substantially comply with this required state child support program (42 USC 608(a)(2) and 609(a)(8); 45 CFR sections 264.30 and 264.31).

**Audit Objectives** Determine whether, after notification by the state Title IV-D agency, the TANF agency has taken necessary action to reduce or deny TANF assistance.

**Suggested Audit Procedures**

a.      Review the state's TANF policies and operating procedures concerning this requirement.

b.      Test a sample of cases referred by the Title IV-D agency to the TANF agency to ascertain if benefits were reduced or denied as required.

**2.      Income Eligibility and Verification System**

**Compliance Requirements** Each state shall participate in the Income Eligibility and Verification System (IEVS) required by Section 1137 of the Act as amended. Under the state plan the state is required to coordinate data exchanges with other federally assisted benefit programs, request and use income and benefit information when making eligibility determinations and adhere to standardized formats and procedures in exchanging information with other programs and agencies. Specifically, the state is required to request and obtain information as follows (42 USC 1320b-7; 45 CFR section 205.55):

a.      Wage information from the state Wage Information Collection Agency should be obtained for all applicants at the first opportunity following receipt of the application, and for all recipients on a quarterly basis.

b.      Unemployment Compensation (UC) information should be obtained for all applicants at the first opportunity, and in each of the first three months in which the individual is receiving aid. This information should also be obtained in each of the first three months following any recipient-reported loss of employment. If an individual is found to be receiving UC, the information should be requested until benefits are exhausted.

c.      All available information from the Social Security Administration (SSA) for all applicants at the first opportunity (see *Federal Tax Return Information* below).

d.      Information from the US Citizenship and Immigration Services and any other information from other agencies in the state or in other states that might provide income or other useful information.

e.      Unearned income from the Internal Revenue Service (IRS) (see *Federal Tax Return Information* below).

*Federal Tax Return Information* – Information from the IRS and some information from SSA is federal tax return information and subject to use and disclosure restrictions by 26

USC 6103. Individual data received from the SSA's Beneficiary Earnings Exchange Record, consisting of wage, self-employment, and certain other income information is considered federal tax return information. However, benefits payments such as Supplemental Security Income are SSA data and not federal tax return information. Under 26 USC 6103, disclosure of federal tax return information from IEVS is restricted to officers and employees of the receiving agency. Outside (non-agency) personnel (including auditors) are not authorized to access this information either directly or by disclosure from receiving agency personnel.

The state is required to review and compare the information obtained from each data exchange against information contained in the case record to determine whether it affects the individual's eligibility or level of assistance, benefits or services under the TANF program, with the following exceptions:

a.    The state is permitted to exclude categories of information items from follow-up if it has received approval from ACF after having demonstrated that follow-up is not cost effective.

b.    The state is permitted, with ACF approval, to exclude information items from certain data sources without written justification if it followed up previously through another source of information. However, information from these data sources that is not duplicative and provides new leads may not be excluded without written justification.

The state shall verify that the information is accurate and applicable to the case circumstances either through the applicant or recipient, or through a third party, if such determination is appropriate based on agency experience or is required before taking adverse action based on information from a federal computer matching program subject to the Computer Matching and Privacy Protection Act (45 CFR section 205.56).

For applicants, if the information is received during the application process, the state must use the information, to the extent possible, to determine eligibility. For recipients or individuals for whom a decision could not be made prior to authorization of benefits, the state must initiate a notice of case action or an entry in the case record that no case action is necessary within 45 days of its receipt of the information. Under certain circumstances, action may be delayed beyond 45 days for no more than 20 percent of the information items targeted for follow-up (45 CFR section 205.56).

HHS may penalize a state for up to 2 percent of the SFAG for failure to participate in IEVS (42 USC 609(a)(4) and 1320b-7; 45 CFR sections 264.10 and 264.11).

**Audit Objectives** Determine whether the state has established and implemented the required IEVS system for data matching, and verification and use of such data. (This audit objective does not include federal tax return information, as discussed in the compliance requirements.)

**Suggested Audit Procedures**

a.    Review state operating manuals and other instructions to gain an understanding of the state's implementation of the IEVS system.

b.    Test a sample of TANF cases subject to IEVS to ascertain if the state:

    (1)    Used the IEVS to determine eligibility in accordance with the state plan.

    (2)    Requested and obtained the data from the state wage information collection agency, the state unemployment agency, SSA (excluding federal tax return information, as discussed in the compliance requirements), the US Citizenship and Immigration Services, and other agencies, as appropriate, and performed the required data matching.

    (3)    Properly considered the information obtained from the data matching in determining eligibility and the amount of TANF benefits.

**3.    Penalty for Refusal to Work**

**Compliance Requirements** State agency must reduce or terminate the assistance payable to the family if an individual in a family receiving assistance refuses to work, subject to any good cause or other exemptions established by the state. HHS may penalize the state by an amount not less than 1 percent and not more than 5 percent of the SFAG for violation of this provision (42 USC 609(a)(14); 45 CFR sections 261.14, 261.16, and 261.54).

**Audit Objectives** Determine whether the state agency is reducing or terminating the assistance grant of those individuals who refuse to engage in work and are not subject to good cause or other exceptions established by the state.

**Suggested Audit Procedures**

a.    Review the state's TANF policies and operating procedures concerning this requirement.

b.    Test a sample of TANF cases where the individual is not working and ascertain if benefits were reduced or denied to individuals who are not exempt under state rules or do not meet state good cause criteria.

**4.    Lack of Child Care for Single Custodial Parent of Child under Age Six**

**Compliance Requirements** If an individual is a single custodial parent caring for a child under the age of 6, the state may not reduce or terminate assistance for the individual's refusal to engage in required work if the individual demonstrates to the state an inability to obtain needed child care for one or more of the following reasons: (a) unavailability of appropriate child care within a reasonable distance from the individual's home or work site; (b) unavailability or unsuitability of informal child care by a relative or under other

arrangements; or (c) unavailability of appropriate and affordable formal child care arrangements. The determination of inability to find child care is made by the state. HHS may penalize a state for up to 5 percent of the SFAG for violation of this provision (42 USC 607(e)(2) and 609(a)(11); 45 CFR sections 261.15, 261.56, and 261.57).

**Audit Objectives** Determine whether the state has improperly reduced or terminated assistance to single custodial parents who refused to work because of inability to obtain child care for a child under the age of 6.

**Suggested Audit Procedures**

a. Gain an understanding of the criteria established by the state to determine benefits for a single custodial parent who refused to work because of inability to obtain child care for a child who is under the age of 6.

b. Select a sample of single custodial parents caring for a child who is under 6 years of age whose benefits have been reduced or terminated.

c. Ascertain if the benefits were improperly reduced or terminated because of inability to obtain child care.

**5.     Penalty for Failure to Comply with Work Verification Plan**

**Compliance Requirements** The state agency must maintain adequate documentation, verification, and internal control procedures to ensure the accuracy of the data used in calculating work participation rates. In so doing, it must have in place procedures to (a) determine whether its work activities may count for participation rate purposes; (b) determine how to count and verify reported hours of work; (c) identify who is a work-eligible individual; and (d) control internal data transmission and accuracy. Each state agency must comply with its HHS-approved Work Verification Plan in effect for the period that is audited. HHS may penalize the state by an amount not less than 1 percent and not more than 5 percent of the SFAG for violation of this provision (42 USC 601, 602, 607, and 609); 45 CFR sections 261.60, 261.61, 261.62, 261.63, 261.64, and 261.65).

**Audit Objectives** Determine whether the state agency is complying with its Work Verification Plan, including adequate documentation, verification, and internal control procedures.

**Suggested Audit Procedures**

a. Review the state's Work Verification Plan and operating procedures concerning this requirement.

b. Test a sample of TANF cases that have been reported to HHS under 45 CFR sections 265.3(b)(1) and 265.3(d)(1) and ascertain if the work participation rate data have been documented, verified, and reported in accordance with the state's Work Verificaion Plan.

## IV.   OTHER INFORMATION

1.   *Transfers out of TANF*

As described in III.A.1.a (2), "Activities Allowed or Unallowed," states (not tribes) may transfer a limited amount of federal TANF funds into the Social Services Block Grant Title XX (Assistance Listing 93.667) and the Child Care and Development Block Grant (Assistance Listing 93.575). These transfers are reflected in lines 2 and 3 of both the quarterly *TANF Financial Report* ACF-196R, and the quarterly *Territorial Financial Report* ACF-196-TR. The amounts transferred out of TANF are subject to the requirements of the program into which they are transferred and should not be included in the audit universe and total expenditures of TANF when determining Type A programs. The amount transferred out should not be shown as TANF expenditures on the Schedule of Expenditures of Federal Awards but should be shown as expenditures for the program into which they are transferred.

2.   *State MOE Expended by Tribes*

A state may provide a tribe state-donated MOE funds that are expended by the tribe. For the tribe, state-donated MOE funds are not federal awards expended, shall not be considered in determining Type A programs, and shall not be shown as expenditures on the Schedule of Expenditures of Federal Awards. However, state-donated MOE funds expended by a tribe shall be included by the auditor of the state when testing III.G.2.1, "Matching, Level of Effort, Earmarking – Level of Effort – *Maintenance of Effort*."

Tribes may choose to commingle their state-donated MOE funds with federal funds. Because of the commingling, the audit of the tribe will include testing of the state-donated MOE and the auditor of the state should consider relying on this testing in accordance with auditing standards and 2 CFR Part 200, Subpart F. However, the state-donated MOE is not considered federal awards expended by the tribe.

3.   *Tribal TANF Recipients under a Pub. L. No. 102-477 Demonstration Project (477)*

Audits of Indian tribal governments with tribal TANF in their approved 477 plan must follow the guidance in the 477 Cluster found in the Department of the Interior's section of Part IV of this Supplement.

4.   *Spending Levels of the Territories*

A funding ceiling applies to Guam, the Virgin Islands, American Samoa and Puerto Rico. The programs subject to the funding ceiling are the Adult Assistance programs under Titles I, X, XIV, and XVI of the Act; TANF; Foster Care (Assistance Listing 93.658); Adoption Assistance (Assistance Listing 93.659) and Independent Living (Assistance Listing 93.674) programs under Title IV-E of the Act; and the matching grant under section 1108(b). Total payments to each Territory may not exceed the following: Guam – $4,686,000; Virgin Islands – $3,554,000; Puerto Rico – $107,255,000; and American Samoa – $1,000,000. However, the TANF Family Assistance Grant cannot exceed the Territory's fixed annual amount (42 USC 1308(a) and (c)).

5.      *Prohibition on Use of Federal TANF and State MOE funds for Juvenile Justice Services*

ACF has identified juvenile justice services expenditures as an area of risk for non-compliance and issued a Program Instruction (TANF-ACF-PI-2015-02) (http://www.acf.hhs.gov/ofa/resource/tanf-acf-pi-2015-02) to remind TANF jurisdictions that federal TANF and state MOE funds must not be used to provide juvenile justice services, except where authorized under prior law, as explained in the program instruction.