# EXHIBIT 5

**DECLARATION OF ANGELA RODGERS**

I, Angela Rodgers, declare under the penalty of perjury pursuant to 28 U.S.C. § 1746 that the following is true and correct:

1. I am a Deputy Director of Programs for the Arizona Department of Economic Security ("ADES"). I am familiar with the information in the statements set forth below either through personal knowledge, consultation with ADES staff/or ADES subcontractors, or from my review of relevant documents and information.

2. As a Deputy Director, I oversee three divisions within ADES: Benefits and Medical Eligibility, Employment and Rehabilitation Services, and Child and Community Services.

3. Before becoming a Deputy Director at ADES, I served as the ADES Director for two years and over a decade as President and Chief Executive Officer of the Arizona Food Bank Network.  Collectively, I have over 25 years of experience in human services operations, policy analysis, resource management and cross sector collaboration.  I hold a master's degree in social work and a bachelor's degree in criminology and sociology.

4. ADES is Arizona's largest social services agency. ADES administers more than 60 different programs and has more than 8,000 employees who work together to provide services to approximately one million Arizonans per month.

5. ADES's mission is strengthening individuals, families, and communities for a better quality of life.  ADES carries out its mission through work with individuals, families, community and advocacy organizations, and state and federal partners to facilitate the

1

safety and economic security of persons who qualify for ADES benefits and services in the State of Arizona.

**A. TANF in Arizona**

6. Temporary Assistance for Needy Families (TANF) is a block grant program that provides billions of dollars in federal funds to states, which use the funds in a variety of ways, including to provide cash assistance and non-cash benefits and services to low-income families with children.

7. In Arizona, TANF Block Grant funding is appropriated by our state legislature to two agencies: ADES and the Department of Child Safety (DCS), with DCS serving as the state's child protection agency.

8. Arizona receives approximately $225 million annually in TANF funding, distributed quarterly. TANF funding enables ADES to administer the TANF Cash Assistance ("CA") Program, the TANF Jobs Program, Child Care Assistance, Short-Term Crisis Services ("STCS"), Homeless Prevention, Domestic Violence ("DV") Services, and The Emergency Food Assistance Program ("TEFAP").  Approximately 71% of the block grant is appropriated to DCS.

9. TANF and the programs it funds help Arizona families transition into self-sufficiency. Arizona's TANF-funded programs are designed to help individuals (a) Receive services to meet basic needs, including children residing with parents who are unable to provide their basic needs as well as children living in certain foster or kinship arrangements and adult recipients preparing to enter the workplace through temporary income assistance; (b) Gain enhanced employment skills through work activities while receiving supportive services to remove barriers to find and maintain

2

employment for work-eligible individuals; (c) Achieve self-sufficiency and the ability to care for children by receiving the support they need to work, including child care assistance, transportation assistance, and collaborative efforts with community providers; (d) Gain access to shelter services, receive assistance in achieving or maintaining self-sufficiency, and ensure physical security and safe home environments when facing domestic violence situations that threaten economic security or family stability; and (e) Maintain stable and safe home environments by receiving in-home support services intended to prevent children from entering the foster care system and provide care for children in a foster care setting or preparing to exit the foster care system as young adults.

10. As of June 2026, 2,396 households or 4,330 individuals (402 adults and 3,928 children) participate in TANF cash assistance benefits. The average issuance per person is $136.48 per month.

B. **Arizona's TANF Fraud Prevention Procedures**

11. ADES, on behalf of Arizona, ensures procedures are in place to prevent ineligible TANF benefits distributions and address erroneous payments or attempted fraud. ADES completes reviews of eligibility factors for those receiving cash assistance, on at least an annual basis.

12. To ensure TANF funds are issued only to TANF eligible recipients, ADES has an eligibility determination process that ADES eligibility specialists must follow for applicants and recipients of recurring cash assistance and non-cash benefits, and clearly defined program requirements for other TANF funded services and supports.

Further, ADES conducts reviews to ensure program compliance, in accordance with federal and State statutes, rules, and regulations.

13. Applicants and recipients of cash assistance grants must document to ADES that they are TANF eligible as part of the application and renewal process.  Additionally, if a household experiences a change between certifications, they are required to report changes no later than the tenth calendar day following the month in which the change occurred to ensure that the household continues to be eligible for the assistance.

14. The initial eligibility determination process includes an interview conducted by ADES with the applicant. As part of this determination process, appropriate documents are submitted by the applicant to determine eligibility.  Each applicant must, as a condition of eligibility for themselves or others in the applying household, furnish evidence to ADES to provide verification of those factors which affect initial eligibility and benefit amount, including: identity, residence, family composition, housing costs, income and resources, and United States citizenship or, if not a United States citizen, evidence of satisfactory immigration status for TANF eligibility. This information is further validated by system and hub checks.

15. The renewal eligibility process also includes an interview and the applicant must file a new application and provide updated verification to confirm ongoing eligibility.

16. ADES also ensures that various computer matches take place to confirm eligibility, in compliance with several federal laws and regulations. For example, ADES utilizes the Income Eligibility Verification System (IEVS), as required by 42 U.S.C. § 1320b-7 to confirm continuing eligibility and benefit levels.  ADES uses IEVS to receive federal tax information, which is used to confirm whether an individual's income and

resources permit them to be eligible for TANF. Federal regulations require ADES to resolve discrepancies between client information and data matches, and to provide affected individuals an opportunity to contest these data findings, before terminating, denying, or reducing benefits to an applicant or recipient.

17. ADES uses the State Verification Exchange System (SVES) and may also review the Public Assistance Reporting Information System (PARIS) Interstate match to identify if an individual is receiving benefits in more than one state at the same time.

18. ADES also undertakes a monthly match to identify individuals who have conducted more than 10% out-of-state Electronic Benefits Transfer (EBT) cash transactions during the past six months, which may indicate residence in a state other than Arizona. A letter is generated to the household requiring the household to contact the ADES to explain the circumstances that require the out-of-state transactions.

19. ADES performs monthly matches of active TANF recipients with the federal National Directory of New Hires (NDNH), which contains nationwide W-4 information. The TANF matches involve all active adult recipients. NDNH matches are verified by a special ADES unit to confirm wages with the household.

20. ADES Office of Inspector General, via an externally facing website, enables the public to submit welfare fraud allegations. These submissions may contain information regarding individuals suspected of public assistance fraud and may be investigated for appropriate case action, collections, and prosecution.

21. Ariz. Rev. Stat. § 46-201 requires applicants for TANF benefits to cooperate with fraud investigations, with a failure to cooperate potentially resulting in case closure and termination of benefits. If the recipient is found to have committed an intentional

program violation (IPV), the claim is established, and recovery is pursued from the recipient.  If a recipient is found to have committed an IPV, the recipient may be disqualified from participation in the program for a period of time or permanently.

C.  **Federal Oversight of Arizona TANF Program**

22. Pursuant to federal statute and regulation, ADES provides certain data on families receiving TANF assistance to the U.S. Department of Health and Human Services (DHHS),  Administration on Children and Families (ACF) on a regular basis, including the TANF Annual Report and quarterly financial reports.

23. Among other things, ADES provides ACF with the data fields specified in a publication titled "ACF-199 TANF" quarterly. These include, for example, social security number, date of birth, and, as to immigration status, an individual's status as either "U.S. Citizen," "Qualified alien," or "Unknown."

24. ADES provides this information for all families receiving TANF cash assistance in Arizona. ADES conveys information provided by DCS to ACF in disaggregated form.

25. Since the closure of the Region IX ACF office in April 2025, there has been limited contact with ACF financial and programmatic staff. Informal questions have been asked and answers provided but no additional reporting.

26. To my knowledge, in the past 2 years, ACF has not performed any of the following activities with respect to Arizona's TANF Program: program integrity reviews, program integrity projects, on-site or virtual visits to TANF agencies, or periodic reviews of policies and procedures.

D.  **TANF System of Record Notice (SORN)**

27. On June 23, 2026, DHHS/ACF, published a System of Records Notice ("SORN") regarding the Temporary Assistance for Needy Families (TANF) program. 91 Fed. Reg. 37406 (June 23, 2026).

28. As I understand it, the TANF SORN makes changes to the purpose and use of the TANF data. It replaces one of the prior purposes of the TANF Data System of Records ("to determine whether grantees are meeting certain requirements prescribed by the Social Security Act, including work participation and time-limit requirements") with the following: "to determine whether grantees are ensuring that TANF recipients are eligible in accordance with the requirements of Title IV–A of the Social Security Act".

29. The TANF SORN adds a new additional purpose:

> "to ensure and confirm grantee compliance with TANF program requirements through HHS agency oversight activities including but not limited to program integrity reviews (e.g. comprehensive assessments of how grantees administer TANF programs and follow statutory requirements), additional audits (e.g. financial audits, programmatic audits, and fraud investigations), and monitoring (e.g. regular review of data reports, on-site or virtual visits to TANF agencies, periodic review of policies and procedures). The purpose is to ensure compliance with all TANF program requirements including but not limited to the work participation rate and time-limits, the requirement to provide complete and accurate data, and the requirement to verify TANF recipients' citizenship or immigration status in records maintained by the Department of Homeland Security (DHS), U.S. Citizenship and Immigration Services (formerly the U.S. Immigration and Nationalization Service (INS)). See 45 U.S.C. 265.7(b); 42 U.S.C. 1320b–7(d); 6 U.S.C. 552(d)."

30. The TANF SORN significantly broadens the categories of records included in the system. Now, the TANF Data System of Records includes not only information "obtained from TANF grantee agencies" (*i.e.*, State agencies), but also "verification information" obtained "from other HHS records; and from other federal or state

agencies or entities engaged to assist ACF with program integrity reviews or projects." 91 Fed. Reg. at 37408.

31. The TANF SORN adds a new "routine use" to the TANF Data System of Records that provides broad authority for ACF to share the records with other states, other federal agencies, and other unspecified "entit[ies]":

> *Disclosure to Another Agency/Entity Engaged to Assist ACF With Program Integrity Reviews or Projects, for TANF Program Compliance Purposes.* Records may be disclosed from this system of records to another federal or grantee agency or entity engaged by ACF (*e.g.,* DHS or TANF program administrators) to assist ACF with program integrity reviews or projects, to verify whether TANF grantee agencies are complying with TANF program requirements, including verifying citizenship or immigration status.

## E.  **Harm To Arizona**

32. Without Court intervention, Arizona faces harm stemming from changes to the TANF SORN.

33. As noted above, apart from the Single Audit and the data reporting required by the TANF Statute, *see* 42 U.S.C. § 611, ACF has not conducted any of the other "agency oversight activities" listed in the new SORN.  ADES does not have TANF reporting responsibilities to other agencies outside of ACF, and it is unknown if access to this information would require Arizona to expend time and resources responding to additional requests.

34. As I understand it, earlier this year, ACF announced that it had "froze[n] access to" TANF funds in five states.  If the agency oversight activities contemplated in the SORN were to result in similar action in Arizona, that would likely have significant programmatic and operational impacts for Arizona, including possible staffing reductions and the elimination of non-mandated services for ADES. Additionally,

contracts with community-based organizations that support vulnerable populations, including domestic violence victims, homeless individuals, and working families accessing child care, could be cancelled or paused without the commitment of these critical funds.

35. Arizona has also made assurances to TANF recipients and non applicant household members that their information will be safeguarded and subject to disclosure only in narrow, defined circumstances, as required by statute. Arizona law provides for the protection of the confidentiality of PII collected from applicants to programs that ADES administers, which includes TANF. *See* Ariz. Rev. Stat. § 41-1959(A) (providing that "all personally identifiable information concerning any applicant, claimant, recipient, employer or client is confidential and shall not be released unless ordered by a superior court judge or provided for by rule of court" or "except as provided in" statutorily enumerated exceptions).

36. This will chill individuals who have concerns about the broad authority asserted in the SORN to share their sensitive personal information with any federal, State, or private entity. Individuals may be less likely to participate in TANF if they believe that doing so will expose the sensitive personal information of themselves and their family members to widespread disclosure. Such concerns are bolstered by public reporting into DHS's efforts to use consolidated data from State benefit programs and other sources to support a variety of surveillance activities. Further, any potential data breach or mishandling of this data by these entities would have the potential to further erode public trust in the States' TANF programs.

9

37. Notably, Arizona already has relatively strict limits on TANF-funded cash assistance, including a 12-month limit on the initial duration of benefits, as provided in Ariz. Rev. Stat. § 46-294, and a low benefit amount relative to other states.  If fewer individuals participate in TANF as a result of this chilling effect, it will reduce the already low number of households receiving benefits from getting needed services and assistance.

38. Arizona will also incur a financial cost in updating communications with TANF applicants or participants that notify TANF applicants or participants of how their personal data is collected, used, and shared. ADES will be required to send notices that could generate more calls and create confusion about how application data will be used, shared, and stored.

DATED: August 3, 2026

Phoenix, Arizona

/s/ Angela Rodgers