# EXHIBIT 13

**DECLARATION OF IAN YAFFE**

I, Ian Yaffe, declare under the penalty of perjury pursuant to 28 U.S.C. § 1746 that the following is true and correct:

1. I am the Director of the Office for Family Independence (OFI) within the Maine Department of Health and Human Services. OFI determines eligibility for various federally and state funded programs including Supplemental Nutrition Assistance Program (SNAP), Summer Electronic Benefit Transfer (Summer EBT), Medicaid (MaineCare in Maine), State Supplement, and Temporary Assistance for Needy Families (TANF). Nutritional and cash benefits are issued on a single Electronic Benefit Transfer (EBT) card per household. OFI also oversees child support collection and distribution, social security disability determinations, and the investigation of fraud and overpayments for the various programs previously mentioned.

2. I am familiar with the information in the statements set forth below either through personal knowledge, consultation with OFI staff, or from my review of relevant documents and information.

***TANF in Maine***

3. OFI administers TANF in Maine and maintains an integrated eligibility system for TANF, SNAP, and MaineCare.

4. TANF is a block grant program that provides billions of dollars in federal funds to states, who in turn provide cash assistance and non-cash benefits and services to low-income families with children. It is one of the largest sources of cash assistance to low-income families and a cornerstone of Maine's anti-poverty work. Maine receives approximately $78 million annually in TANF funding and provides over 46,000 Maine residents with basic recurring cash

assistance and non-cash assistance benefits. 10,838 Maine residents received TANF cash assistance in 2025.

5. Other programs and services supported by Maine TANF block grant funding include: employment and training program services and supports, child-care services, tax credits, early childhood education services, and child welfare services.

***Maine's TANF Fraud Prevention Procedures***

6. OFI, on behalf of Maine, ensures that robust procedures are in place to prevent ineligible TANF benefits distributions and address erroneous payments or attempted fraud.

7. To ensure TANF funds are issued only to TANF eligible recipients, OFI employs a thorough eligibility determination process that staff must follow for applicants and recipients of recurring and emergency cash assistance and non-cash benefits, and clearly defined program requirements for other TANF funded services and supports. Further, OFI conducts reviews of to ensure program compliance, in accordance with federal and State statutes, rules, and regulations. OFI provides extensive direction and support via on-site monitoring, policy directives, meetings, trainings, phone calls, and emails to staff to help guide them in ensuring the accuracy of their determinations.

8. Electronic sources of verification are utilized whenever possible, including, but not limited to data matching from the following agencies and services:

a. Social Security Administration

b. National Directory of New Hires

c. Maine Department of Labor

d. Maine Revenue Service

e. Maine Bureau of Alcoholic Beverages and Lottery Operations

f. Maine State Housing Authority

g. US Citizenship and Immigration Services, Systemic Alien Verification for Entitlements

h. Equifax (The Work Number) – Employment Verification

9. TANF participants must document to DHHS staff that they are TANF eligible as part of the application and recertification process. Additionally, if a household experiences a change in between certifications, they are required to report the change to OFI within 10 days to ensure that the household continues to be eligible for the assistance, except that changes related to a child who will be absent from the home for 45 days or more needs to be reported within five days.

10. The TANF eligibility process includes an interview conducted by OFI staff. As part of the TANF application or renewal process, OFI collects appropriate documents to verify that a participant is eligible. Each participant must, as a condition of eligibility for themselves or others in their household, furnish evidence to OFI that allows OFI to verify factors which affect eligibility and benefit amount, including: identity, residence, family composition, housing costs, income and resources, and United States citizenship or, if not a United States citizen, evidence of satisfactory immigration status for TANF eligibility.

11. Additionally, OFI utilizes approved federal and State processes to ensure Maine is in compliance with program eligibility requirements for each TANF participant. OFI refers participants suspected of fraud or misuse of benefits to its Fraud Investigation and Recovery Unit (FIRU), for investigation. FIRU investigations that confirm the suspected fraud or misuse of benefits result in benefit recovery and when appropriate further prosecution.

12. OFI also ensures that various computer matches take place to confirm eligibility, in compliance with several federal laws and regulations. OFI utilizes the Income Eligibility Verification System (IEVS), as required by 42 U.S.C. § 1320b-7 to confirm continuing eligibility and benefit levels. OFI uses IEVS to quarterly earnings information, which is used to confirm whether an individual's income and resources permit them to be eligible for TANF. Federal law and the written agreements that OFI signs to access this income and eligibility information require OFI to confirm the accuracy of any red flags raised by such data matches, and to provide affected individuals an opportunity to contest these data findings, before terminating, denying, suspending, or reducing benefits to an applicant or recipient. Accordingly, cases that appear to have income exceeding TANF income and resources are reviewed by OFI to determine if the identified income and resources are available and if they impact the recipient's continuing eligibility.

13. OFI also reviews the Public Assistance Reporting Information System (PARIS) Interstate match to identify if an individual is receiving benefits in more than one state at the same time. OFI also conducts an out of state verification request with any state that the applicant has previously resided to identify potential duplication of benefits and account for number of TANF participation months used in other states. OFI also reviews the Electronic Disqualification Recipient System (eDRS) for TANF participants who are also applying for or receiving SNAP benefits.

14. OFI conducts a Prison Match to identify TANF participants who are incarcerated and have been sentenced to a term in a Maine prison as reported by the Maine Department of Corrections or a federal prison as reported on the SSA Federal Prison file. OFI reviews match results and refers potential violations to FIRU for investigation and appropriate case action.

15. OFI performs monthly matches of active TANF participants with the federal National Directory of New Hires (NDNH), which contains nationwide W-4 information. The NDNH matches are conducted for all active adult TANF participants. NDNH matches are verified through a third-party vendor or by sending a request for verification to the adult recipient. Responses are provided to DHHS staff for review and appropriate case action, which may include case closure, termination of benefits, and overpayment/fraud referral and processing. Further use of NDNH data occurs with additional monthly comparisons with select subpopulations of TANF participants, with matches provided to DHHS staff for review and appropriate action.

16. OFI also runs annual matches through the MaineCare (Maine's Medicaid program) passive renewal process against the Maine Directory of New Hires, to identify applicants and recipients who have filed a W-4 with Maine and thus potentially identify new employment that could impact TANF eligibility. Wage information is also provided during this interface process. This verification request may also be used for a specific individual as needed .While enrollment in TANF is no longer a categorical eligibility factor for MaineCare nearly all TANF participants are eligible for and receive MaineCare.

17. A web form located at https://www.maine.gov/dhhs/about/contact/fraud-reporting-form enables the public to electronically submit welfare fraud allegations to FIRU. These submissions contain information regarding individuals suspected of public assistance fraud and are referred to as FIRU for investigation and appropriate case action.

18. In addition to computer matches and public referrals, FIRU establishes claims to recover any benefits issued in error. When a DHHS suspects that it has issued benefits to a recipient in error, the facts used in the eligibility determination are reviewed. If the recipient is found to have committed an intentional program violation (IPV) or if an agency error or an unintentional

household error has occurred, the claim is established and recovery is pursued from the recipient. If a recipient is found to have committed an IPV, the recipient may be disqualified from participation in the program for a period of time.

19. Moreover, as part of its internal controls, OFI conducts work participation verification reviews, which is a quality assurance process that selects representative samples of work-eligible assistance cases for purposes of verifying the accuracy of the participation reporting processes, the accuracy of reporting, and compliance with federal and state regulations. OFI conducts thorough reviews of approximately two percent of its total caseload each month. Reviews are based on federal and state statutes and regulations, as well as Maine's HHS-approved Work Verification Plan. DHHS establishes claims to recover any benefits or support services issued in error. When DHHS determines benefits may have been issued in error or as a result of fraud, the case is referred to FIRU for a review of the facts by an overpayment specialist. If the suspected overpayment is substantiated by FIRU based on the available evidence, FIRU will establish an overpayment. If the client is found to have committed an IPV, the disqualification period is set, a claim is established, and recovery is sought from the client. If the overpayment is determined to be caused due to fraud, FIRU will refer the case for appropriate legal action.

20. A single state audit of Maine's TANF-funded programming is completed on an annual basis by the Office of the State Auditor (OSA). This audit includes all TANF block grant assistance and non-assistance spending within the state of Maine.

***Maine's Process for Verifying Eligibility for TANF Assistance Based on Immigration Status***

21. OFI uses the federal Systematic Alien Verification for Entitlements (SAVE) system to verify a TANF participant's satisfactory immigration status.

22. Verification is completed at application, at the time of annual review, and upon notification of a status change, on an individual basis for all household members seeking assistance.

23. SAVE results are retained in each individual's electronic file for a period of no less than 3 years.

24. As required by law, Maine must provide for the basic rights and dignity of all applicants and recipients of financial services. Maine imposes safeguards to restrict the use and disclosure of information about individuals and families receiving assistance under TANF.

25. Information concerning an applicant or recipient of TANF that is requested from an entity outside of OFI shall only be released by the following:

a. Permission by the applicant or recipient

b. Subpoena; or

c. For the purposes of program administration to programs which establish eligibility and provide services through agencies subject to comparable standards of confidentiality, including:

   i. Investigation and recovery

   ii. Fair hearing preparation

   iii. General Assistance

   iv. Law enforcement, only if the officer provides the recipient's name and enough information to identify the recipient and the individual must be fleeing to avoid prosecution or custody or confinement after conviction.

   v. Suspected child abuse or neglect

26. Information shall only be released to USCIS upon written request related to a specific person for the purposes of an individual criminal investigation.

***Federal Oversight of Maine's TANF Program***

27. Pursuant to federal statute and regulation, Maine DHHS provides certain data on families receiving TANF assistance to ACF on a quarterly basis, including quarterly reporting, the TANF Annual Report, and quarterly financial reports.

28. Among other things, Maine DHHS provides ACF with the data fields specified in a publication titled "ACF-199 TANF and ACF-209 SSPMOE Data Reporting Instructions," OMB Control Number 0970-0338. These include, for example, social security number, date of birth, and, as to immigration status, an individual's status as either "U.S. Citizen," "Qualified alien," or "Unknown."

29. Maine DHHS provides this information for all families receiving federally funded TANF assistance and SSP programs in Maine.

30. Pursuant to the federal Single Audit Act, Maine DHHS engages an auditor with respect to its TANF program. This audit takes place annually. The audit is completed by the Maine Office of the State Auditor. The audit includes all TANF block grant funded assistance and non-assistance spending.

31. To my knowledge, in the last 10 years, ACF has never performed any of the following activities with respect to Maine's TANF Program: program integrity reviews, program integrity projects, additional audits beyond the Single Audit, on-site or virtual visits to TANF agencies, or periodic reviews of policies and procedures.

***TANF SORN***

32. I understand that on June 23, 2026, U.S. Administration for Children and Families (ACF), which sits within the U.S. Department of Health and Human Services (HHS), published a System of Records Notice ("SORN") regarding the Temporary Assistance for Needy Families (TANF) program. 91 Fed. Reg. 37406 (June 23, 2026).

33. ***First***, the TANF SORN adds two new purposes. It replaces one of the prior purposes of the TANF Data System of Records ("to determine whether grantees are meeting certain requirements prescribed by the Social Security Act, including work participation and time-limit requirements") with the following: "to determine whether grantees are ensuring that TANF recipients are eligible in accordance with the requirements of Title IV–A of the Social Security Act".

34. The TANF SORN adds a new additional purpose:

> to ensure and confirm grantee compliance with TANF program requirements through HHS agency oversight activities including but not limited to program integrity reviews (e.g. comprehensive assessments of how grantees administer TANF programs and follow statutory requirements), additional audits (e.g. financial audits, programmatic audits, and fraud investigations), and monitoring (e.g. regular review of data reports, on-site or virtual visits to TANF agencies, periodic review of policies and procedures). The purpose is to ensure compliance with all TANF program requirements including but not limited to the work participation rate and time-limits, the requirement to provide complete and accurate data, and the requirement to verify TANF recipients' citizenship or immigration status in records maintained by the Department of Homeland Security (DHS), U.S. Citizenship and Immigration Services (formerly the U.S. Immigration and Naturalization Service (INS)). See 45 U.S.C. 265.7(b); 42 U.S.C. 1320b–7(d); 6 U.S.C. 552(d).

35. ***Second,*** the TANF SORN significantly broadens the categories of records included in the system. Now, the TANF Data System of Records includes not only information "obtained from TANF grantee agencies" (*i.e.*, State agencies), but also "verification information" obtained

"from other HHS records; and from other federal or state agencies or entities engaged to assist ACF with program integrity reviews or projects." 91 Fed. Reg. at 37408.

36. ***Third***, the TANF SORN adds a new "routine use" to the TANF Data System of Records that provides broad authority for ACF to share the records with other states, other federal agencies, and other unspecified entities:

> *Disclosure to Another Agency/Entity Engaged to Assist ACF With Program Integrity Reviews or Projects, for TANF Program Compliance Purposes.* Records may be disclosed from this system of records to another federal or grantee agency or entity engaged by ACF (*e.g.,* DHS or TANF program administrators) to assist ACF with program integrity reviews or projects, to verify whether TANF grantee agencies are complying with TANF program requirements, including verifying citizenship or immigration status.

37. ***Fourth***, the TANF SORN lists new statutory authority. In addition to Title IV-A of the Social Security Act, 42 U.S.C. §§ 601-619 (the "TANF Statute"), the TANF SORN adds two additional statutes: 42 U.S.C. § 1320b–7 and 8 U.S.C. § 1373.

***Harm To Maine***

38. Without Court intervention, Maine faces harm stemming from the TANF SORN.

39. The TANF SORN states that one of the purposes of the modified system of records is "to ensure and confirm grantee compliance with TANF program requirements through agency oversight activities including but not limited to program integrity reviews (e.g. comprehensive assessments of how grantees administer TANF programs and follow statutory requirements), additional audits (e.g. financial audits, programmatic audits, and fraud investigations), and monitoring (e.g. regular review of data reports, on-site or virtual visits to TANF agencies, periodic review of policies and procedures)."

40. As noted above, apart from the Single Audit and the data reporting required by the TANF Statute, *see* 42 U.S.C. § 611, ACF has not historically conducted any of the other listed

"agency oversight activities." ACF doing so as a result of the TANF SORN would require Maine to expend time and resources responding to ACF requests. Maine already engages in an extensive, labor-intensive single state audit on an annual basis. This audit begins in August and runs through the end of March of the following year. Any additional information required to be provided by Maine would necessitate a time consuming, labor-intensive, and duplicative process of collecting documentation. This would be separate from the process that, as noted above, Maine already engages in on a regular basis as part of its monitoring efforts that ensure OFI follows all state and federal requirements regarding TANF eligibility.

41. As to immigration status verification in particular, these agency oversight activities are likely to lead to misleading and improper results. Immigration statuses routinely change over time. The federal reports submitted by Maine DHHS are historical in nature and reflect the immigration status effective for an individual during the reporting month assistance was received. The SAVE system does not provide a historical summary of changes and can only provide a point-in-time verification based on when the SAVE is completed. Meaning, it is very possible that someone who is ineligible today based on immigration status, was eligible in a previous quarter.

42. Maine DHHS did not and could not anticipate the new routine use of TANF data announced in the HHS-ACF SORN noticed in the Federal Register on June 23, 2026. DHHS therefore had no opportunity to draft disclosures to any TANF recipients disclosing the proposed new routine use of their data contained in the June 23 SORN.

43. Earlier this year, ACF announced that it had "froze[n] access to" TANF funds in five states. *See* https://www.hhs.gov/press-room/hhs-freezes-child-care-family-assistance-grants-five-states-fraud-concerns.html. If the agency oversight activities were to result in similar action,

that would likely have significant programmatic and operational impacts for Maine, with likely staffing reductions and the elimination of non-mandated services.

44. Similarly, HHS announced last year that it was reversing decades of agency policy and intends to share data from the Medicaid program with DHS and Immigration and Customs Enforcement (ICE) for use in immigration enforcement activities. *See* HHS Centers for Medicare & Medicaid Services, *Notice of Medicaid Information Sharing Between the Centers for Medicare & Medicaid Services and the Department of Homeland Security* (Nov. 25, 2025), available at https://www.federalregister.gov/documents/2025/11/25/2025-20911/notice-of-medicaid-information-sharing-between-the-centers-for-medicare-and-medicaid-services-and. In this environment, the SORN's announcement that ACF plans to begin sharing Maine's TANF recipients' data with DHS will cause additional harm to Maine, as it risks eroding the trust that DHHS and OFI have developed with immigrant communities in Maine. OFI requires all TANF applicants to attest to their citizen or noncitizen status. All citizens are verified through a data match with SSA. All noncitizens must provide documentation of their attested status, and OFI has informed applicants that the Department would verify their attested status with the federal government. But OFI has also encouraged all potentially eligible households to take advantage of TANF and other assistance to help raise their children and families out of poverty and move toward self-sufficiency. If ACF begins sharing TANF data with DHS, then community fears that DHS will use that data for purposes other than valid eligibility checks will impede that public trust, and at best it is duplicative of the USCIS, SAVE verification process Maine already completed and would be a waste of taxpayer dollars.

45. Further, the TANF SORN will erode the trust that Maine has developed with immigrant communities and deter individuals from participating in TANF. Maine has made

assurances to TANF recipients that their information will be safeguarded and subject to disclosure only in narrow, defined circumstances, as required by statute and promulgated agency rules.

46. This chilling effect will extend beyond immigration-related concerns to individuals who have concerns about the broad authority asserted in the SORN to share their sensitive personal information with any federal, State, or private entity. Individuals are less likely to participate in TANF if they believe that doing so will expose the sensitive personal information of themselves and their family members to widespread disclosure. Such concerns are bolstered by public reporting into DHS's efforts to use consolidated data from State benefit programs and other sources to support a variety of surveillance activities. Further, any potential data breach or mishandling of this data by these entities would have the potential to further erode trust in the States' TANF programs.

47. Reductions in TANF enrollment would likely result in an increase in General Assistance expenditures as needy families would be unable to meet their most basic needs, causing hardship to both the State of Maine and to municipalities and Tribes that fund this program. Furthermore, numerous studies, including research conducted by the National Institutes of Health, have demonstrated a direct link between TANF participation and reduced incidents of child abuse and neglect. The financial hardship for families discouraged from utilizing TANF may also contribute to an increase in child abuse and neglect allegations, potentially compromising the health and safety of Maine children.

48. Maine will also incur a financial cost in updating communications with TANF applicants or participants that notify TANF applicants or participants of how their personal data is collected, used, and shared. All systems changes would require input and testing pertinent to all programs administered by OFI. All changes would be required to be communicated in writing. A

change of this nature would require changes to all letters, paper applications and portal applications. All changes to the application documents require further approval by CMS and FNA. These changes would necessitate additional staffing resources for legal, technology and administration challenges.

DATED: July 31, 2026

IAN YAFFE

Director, Office for Family Independence

Maine Department of Health and Human Services