# EXHIBIT 21

**DECLARATION OF CLAIRE CARPENTER-SEGUIN**

I, Claire Carpenter-Seguin, declare under the penalty of perjury pursuant to 28 U.S.C. § 1746 that the following is true and correct:

1. I am the Director of the Self Sufficiency Program (SSP) for the Oregon Department of Human Services (ODHS).

2. As the SSP Director, I oversee the administration of Oregon's Temporary Assistance for Needy Families Program (TANF) as well as other cash and public benefits programs to help people move out of poverty and stabilize their lives. I have served in the role since 2023. Prior to that I served as Interim Director and Deputy Director of SSP. I also have more than 30 years of experience in community development and affordable housing development. I have long been an advocate for anti-poverty programs.

3. ODHS is Oregon's principal agency for helping Oregonians achieve well-being and independence. It administers a variety of human services programs for the state's residents.

4. ODHS SSP provides resources like cash and food assistance, employment support, and targeted services to help Oregonians move out of poverty.

5. I am familiar with the information in the statements set forth below either through personal knowledge, consultation with ODHS staff, or from my review of relevant documents and information.

***TANF in Oregon***

6. ODHS administers TANF in Oregon.

7. TANF is a block grant program that provides billions of dollars in federal funds to states, who in turn provide cash assistance and non-cash benefits and services to low-income families with children. It is one of the largest sources of cash assistance to low-income families and a cornerstone of Oregon's anti-poverty work. Oregon receives approximately $165 million

annually in TANF funding and provides approximately 100,000 Oregon residents monthly with basic recurring cash assistance and non-cash assistance benefits.

8. TANF serves as Oregon's primary tool for helping families with children experiencing deep poverty. Comprised of cash assistance, personalized case management, employment and training services, and other supports, TANF helps families build stability and avoid crises that can lead to child welfare system involvement, homelessness, emergency services use, or long-term need for public assistance. In sum, the TANF program is designed to respond to immediate needs, prevent more emotionally and financially costly interventions, and help families build the conditions necessary for their long-term success.

***Oregon's TANF Fraud Prevention Procedures***

9. ODHS, on behalf of Oregon, ensures that robust procedures are in place to prevent ineligible TANF benefits distributions and address erroneous payments or attempted fraud.

10. To ensure TANF funds are issued only to TANF eligible recipients, Oregon has a robust eligibility determination process that ODHS follows for applicants and recipients of recurring and emergency cash assistance and non-cash benefits, and clearly defined program requirements for other TANF funded services and supports. Further, ODHS conducts quality control reviews of eligibility determinations to ensure program compliance, in accordance with federal and State statutes, rules and regulations. ODHS provides extensive direction and support for its eligibility workers via on-site monitoring, policy directives, meetings, trainings, phone calls, and emails to help guide them in ensuring the accuracy of their determinations.

11. Applicants and recipients of cash assistance grants must submit information and documentation to ODHS demonstrating that they are TANF eligible as part of the application and recertification process. Additionally, if a household experiences a change in between certifications,

they are required to report the change to the ODHS within ten days to ensure that the household continues to be eligible for the assistance.

12. ODHS's eligibility determination process includes an interview conducted by ODHS staff with the applicant and recipient.

13. Each TANF applicant and recipient must, as a condition of eligibility for themselves or others in the applying household, provide verification, or ODHS must verify through third-party systems, those factors which affect initial eligibility and benefit amount, including: identity, residence, family composition, income and resources, and United States citizenship or, if not a United Citizen, evidence of satisfactory immigration status for TANF eligibility.

14. ODHS also ensures that various computer matches take place to confirm eligibility, in compliance with several federal laws and regulations.

15. ODHS utilizes the Income Eligibility Verification System (IEVS), as required by 42 U.S.C. § 1320b-7, to confirm continuing eligibility and benefit levels. This includes confirming whether an individual's income and resources permit them to be eligible for TANF. Federal law and the written agreements that ODHS signs to access this income and eligibility information require ODHS to confirm the accuracy of any red flags raised by such data matches, and to provide affected individuals an opportunity to contest these data findings, before terminating, denying, suspending or reducing benefits to an applicant or recipient. Accordingly, ODHS conducts further review and investigation of cases that appear to have income exceeding TANF income and resources are referred to determine if the identified income and resources are available and if they impact the recipient's continuing eligibility.

16. ODHS also reviews the Public Assistance Reporting Information System (PARIS) Interstate match to identify if an individual is receiving benefits in more than one state at the same

time. If this produces match results, ODHS conducts further case investigation and takes appropriate case action.

17. ODHS conducts a Prison Match to identify cash assistance recipients who are incarcerated and have been sentenced to a term in an Oregon prison or county jail. If this produces match results, ODHS conducts further case investigation and takes appropriate case action.

18. ODHS also undertakes a monthly match to identify individuals whose Electronic Benefits Transfer (EBT) cash transactions are conducted 100% out of state which may indicate residence in a state other than Oregon. ODHS conducts further investigation where matches are identified for two consecutive months. Based upon the results of that investigation, appropriate action is then taken.

19. ODHS performs monthly matches of individuals receiving certain public benefits, including those who are active recipients of both SNAP and TANF benefits, with the federal National Directory of New Hires (NDNH), which contains nationwide W-4 information. NDNH matches are systematically generated based on name, social security number, and an identified discrepancy against reported income in state systems. ODHS investigates responses from the NDNH report, sends requests to program applicants and participants seeking additional proof of income, and takes appropriate case action to ensure program compliance.

20. ODHS also maintains systems for the public to report information regarding suspected fraud of people receiving TANF or other similar public benefits. ODHS accepts reports either online, by Fax, or by mail. ODHS conducts careful investigation of reports and takes appropriate case action based on the results of its investigations.

21. ODHS's computer eligibility systems are also programmed to automatically identify and flag TANF cases with suspected overpayments for further manual review and

investigation. ODHS further requires its employees to monitor for potential fraud when conducting case reviews or interacting with TANF clients, and then conducts thorough investigations if potential fraud is identified.

22. ODHS takes action to establish and recover overpayments, and to recover benefits when it is determined that fraud has occurred. When ODHS determines that benefits were issued to a recipient as a result of fraud, the facts used in the determination are carefully reviewed. If suspected fraud is substantiated by the available evidence, ODHS takes appropriate case action through administrative process, including providing notice and an opportunity for hearing in front of an administrative law judge, and seeking recoupment of benefit payments. ODHS also makes criminal fraud referrals to law enforcement officials when appropriate.

23. If a TANF recipient is found to have committed an intentional program violation (IPV), the claim is established and recovery is pursued from the recipient. If a recipient is found to have committed an IPV, the recipient may be disqualified from participation in the TANF program for a period of time.

24. Moreover, as part of its internal controls, ODHS conducts monthly work participation verification reviews, which is a quality control process that selects representative samples of work-eligible assistance cases for purposes of verifying the accuracy of ODHS's participation reporting processes and compliance with federal and state regulations.

25. In addition, Oregon conducts a program review and audit that is performed by the Oregon Secretary of State's (SOS) office. This annual audit reviews a sample of the quality control reviews that ODHS conducted during the year, as well as a sample of cases reported on the ACF-199 TANF federal report. The audits are conducted in accordance with Oregon's federally approved Work Verification Plan.

***Oregon's Process for Verifying Eligibility for TANF Assistance Based on Immigration Status***

26. ODHS uses the federal Systematic Alien Verification for Entitlements (SAVE) system to verify an applicant or recipient's qualified alien status.

27. When conducting eligibility determinations, ODHS will request information and verification from applicants necessary to run complete and accurate checks through the SAVE system. If SAVE verifies eligibility, ODHS retains a copy of that verification as proof.

28. If SAVE indicates that secondary verification is required, ODHS obtains and uploads additional documentation from the applicant into the SAVE system as necessary for secondary verification to be conducted. For cases requiring secondary verification, ODHS will continue to monitor and coordinate to ensure appropriate verification is obtained through SAVE.

29. As required by law, Oregon imposes safeguards to restrict the use and disclosure of information about individuals and families receiving assistance under TANF.

30. The use and disclosure of personally identifiable and case-specific information about applicants and recipients of TANF benefits is safeguard under Oregon law, including Oregon Revised Statutes (O.R.S.) sections 411.320, 412.072, and 180.805. These laws generally prohibit ODHS from disclosing or using the contents of any public assistance records, files, papers or communications for purposes other than those directly connected with the administration of the public assistance programs, with limited exceptions. These laws are intended to protect applicants and recipients of public assistance and ensure that their personally identifiable information is used for programmatic purposes with their knowledge and consent.

31. Although ODHS shares caseload data with the U.S. Administration for Children and Families (ACF), it has done so with the understanding that the data would be used for purposes consistent with program statutes and regulations. ODHS did not and has not anticipated the new routine use of TANF data announced in the recent published System of Records Notice (SORN),

and has had no opportunity to draft disclosures to prior TANF recipients to disclose this new routine use of their data.

***Federal Oversight of Oregon TANF Program***

32. Pursuant to federal statute and regulation, ODHS provides certain data on families receiving TANF assistance to ACF on a quarterly basis, including quarterly reporting, the TANF Annual Report, and quarterly financial reports.

33. Among other things, ODHS provides ACF with the data fields specified in a publication titled "ACF-199 TANF and ACF-209 SSP-MOE Data Reporting Instructions," OMB Control Number 0970-0338. These include, for example, social security number, date of birth, and, as to immigration status, an individual's status as either "U.S. Citizen," "Qualified alien," "Non-Qualified Alien," or "Unknown." The federal reports also include details such as demographics, income and benefits, and work activities performed by the individuals.

34. ODHS provides this information to ACF for all families in Oregon receiving federal TANF assistance or who count towards Oregon's maintenance of effort (MOE).

35. Pursuant to the federal Single Audit Act, ODHS engages an auditor with respect to its TANF program. The Oregon Secretary of State (SOS) office has conducted the Single Audit for Oregon's TANF program annually in accordance with federal and state law.

36. The audits review for ODHS's compliance with federal program requirements, including compliance with program regulations when making eligibility determinations; whether the state has accurately reported federal expenditures; and whether the state has effective internal controls. Samples are also selected from the ACF-199 TANF and ACF-209 MOE reports for auditors to conduct a review of all elements. Audit findings are communicated in writing to ODHS for review, adjustments, and corrective action where appropriate. Audit findings are also communicated to the federal government through inclusion in Oregon's Single Audit Report.

37. There has historically been little federal oversight of Oregon's TANF program beyond the Single Audit, and required federal reporting described above.

38. To my knowledge, ACF has not performed any of the following activities with respect to Oregon's TANF Program within the past five years or more: program integrity reviews, program integrity projects, additional audits beyond the Single Audit, on-site or virtual visits to TANF agencies, or periodic reviews of policies and procedures. Prior to 2020, ACF would occasionally conduct in-person meeting with ODHS program analysts and leadership.

***TANF SORN***

39. I understand that on June 23, 2026, the U.S. Administration for Children and Families (ACF), which sits within the U.S. Department of Health and Human Services (HHS), published a System of Records Notice (SORN) regarding the TANF program. 91 Fed. Reg. 37406 (June 23, 2026).

40. ***First***, the TANF SORN adds two new purposes. It replaces one of the prior purposes of the TANF Data System of Records ("to determine whether grantees are meeting certain requirements prescribed by the Social Security Act, including work participation and time-limit requirements") with the following: "to determine whether grantees are ensuring that TANF recipients are eligible in accordance with the requirements of Title IV–A of the Social Security Act".

41. The TANF SORN adds a new additional purpose:

> to ensure and confirm grantee compliance with TANF program requirements through HHS agency oversight activities including but not limited to program integrity reviews (e.g. comprehensive assessments of how grantees administer TANF programs and follow statutory requirements), additional audits (e.g. financial audits, programmatic audits, and fraud investigations), and monitoring (e.g. regular review of data reports, on-site or virtual visits to TANF agencies, periodic review of policies and procedures). The purpose is to ensure compliance with all TANF program requirements including but not limited to the work participation rate and

time-limits, the requirement to provide complete and accurate data, and the requirement to verify TANF recipients' citizenship or immigration status in records maintained by the Department of Homeland Security (DHS), U.S. Citizenship and Immigration Services (formerly the U.S. Immigration and Nationalization Service (INS)). See 45 U.S.C. 265.7(b); 42 U.S.C. 1320b–7(d); 6 U.S.C. 552(d).

42. ***Second,*** the TANF SORN significantly broadens the categories of records included in the system. Now, the TANF Data System of Records includes not only information "obtained from TANF grantee agencies" (*i.e.*, State agencies), but also "verification information" obtained "from other HHS records; and from other federal or state agencies or entities engaged to assist ACF with program integrity reviews or projects." 91 Fed. Reg. at 37408.

43. ***Third***, the TANF SORN adds a new "routine use" to the TANF Data System of Records that provides broad authority for ACF to share the records with other states, other federal agencies, and other unspecified "entit[ies]":

> *Disclosure to Another Agency/Entity Engaged to Assist ACF With Program Integrity Reviews or Projects, for TANF Program Compliance Purposes.* Records may be disclosed from this system of records to another federal or grantee agency or entity engaged by ACF (*e.g.,* DHS or TANF program administrators) to assist ACF with program integrity reviews or projects, to verify whether TANF grantee agencies are complying with TANF program requirements, including verifying citizenship or immigration status.

44. ***Fourth***, the TANF SORN lists new statutory authority. In addition to Title IV-A of the Social Security Act, 42 U.S.C. §§ 601-619 (the "TANF Statute"), the TANF SORN adds two additional statutes: 42 U.S.C. § 1320b–7 and 8 U.S.C. § 1373.

***Harm To Oregon***

45. Without Court intervention, Oregon faces harm stemming from the TANF SORN.

46. The TANF SORN states that one of the purposes of the modified system of records is "to ensure and confirm grantee compliance with TANF program requirements through agency oversight activities including but not limited to program integrity reviews (e.g. comprehensive assessments of how grantees administer TANF programs and follow statutory requirements),

additional audits (e.g. financial audits, programmatic audits, and fraud investigations), and monitoring (e.g. regular review of data reports, on-site or virtual visits to TANF agencies, periodic review of policies and procedures)."

47. As noted above, apart from the Single Audit and the data reporting required by the TANF Statute, *see* 42 U.S.C. § 611, ACF has not historically conducted any of the other listed "agency oversight activities." ACF doing so as a result of the TANF SORN would require Oregon to expend time and resources responding to ACF requests. This would include time spent for ODHS staff to collect, review, organize, and report on case records generated from Oregon's complex integrated eligibility system, as well as time needed to review existing data-matching or usage agreements to ensure that data is used and disclosed consistently with those agreements. This might also require ODHS to engage system vendors to generate or build new types or reports or system capabilities to respond to newly formed federal requests, at potentially significant costs to the state. This will likely also require ODHS staff to provide context, training, and coordination to federal employees who are not familiar with state processes, records, and systems.

48. Earlier this year, ACF announced that it had "froze[n] access to" TANF funds in five states. *See* https://www.hhs.gov/press-room/hhs-freezes-child-care-family-assistance-grants-five-states-fraud-concerns.html. If the agency oversight activities were to result in similar action, that would likely have significant programmatic and operational impacts for Oregon, with likely staffing reductions and the pause or elimination of critical services.

49. Similarly, HHS announced last year that it was reversing decades of agency policy and intends to share data from the Medicaid program with U.S. DHS and Immigration and Customs Enforcement (ICE) for use in immigration enforcement activities. *See* HHS Centers for Medicare & Medicaid Services, *Notice of Medicaid Information Sharing Between the Centers for Medicare*

*& Medicaid Services and the Department of Homeland Security* (Nov. 25, 2025), available at https://www.federalregister.gov/documents/2025/11/25/2025-20911/notice-of-medicaid-information-sharing-between-the-centers-for-medicare-and-medicaid-services-and. In this environment, the SORN's announcement that ACF plans to begin sharing Oregon's TANF recipients' data with U.S. DHS will cause additional harm to Oregon, as it risks eroding the trust that ODHS has developed with immigrant communities in Oregon.

50. ODHS has always required TANF applicants who are not citizens to attest that they have an eligible immigration status, and to provide documentation of that status, and has told applicants that ODHS would verify that status with the federal government. But ODHS has also encouraged eligible households to take advantage of TANF and other assistance to help raise their children and families out of poverty. If ACF begins sharing TANF data with U.S. DHS, then community fears that U.S. DHS will use that data for purposes other than valid eligibility checks will impede that public trust.

51. Oregon has also made assurances to TANF recipients that their information will be safeguarded and subject to disclosure only in narrow, defined circumstances, as required by statute. If ACF can proceed with sharing TANF data with U.S. DHS, without clearly defined purposes and limits required by federal law, then community fears that U.S. DHS will use that data for other purposes will impede that public trust and chill participation in Oregon's TANF programs by citizens and qualified non-citizens alike.

52. This chilling effect will extend beyond immigration-related concerns to individuals who have concerns about the broad authority asserted in the SORN to share their sensitive personal information with any federal, State, or private entity. Individuals are less likely to participate in the TANF program if they believe that doing so will expose the sensitive personal information of

themselves and their family members to widespread disclosure. Such concerns are bolstered by public reporting into U.S. DHS's efforts to use consolidated data from State benefit programs and other sources to support a variety of surveillance activities. Further, any potential data breach or mishandling of this data by these entities would have the potential to further erode trust in the States' TANF programs.

53. If fewer individuals participate in TANF, Oregon will suffer significant harms. TANF cash assistance helps families by providing resources and stability to parents who are developing job skills and locating work to gain greater self-sufficiency. When families who are experiencing high rates of poverty lack access to TANF, they are at greater risk of involvement in state child welfare systems.[1] Further, without this cash assistance, families have less available resources to cover existing expenses and may experience houselessness at higher rates, which in turn affects physical and mental health. These outcomes strain state child welfare systems and medical assistance programs, creating increased demand and raise costs for such programs.

54. Oregon will also incur a financial cost in updating communications with TANF applicants or participants to notify them of how their personal data is collected, used, and shared. This includes possible targeted outreach to existing TANF participants to explain the new usage, updates to existing forms and public facing systems, and updates to program-related guidance or disclosure-related statements.

DATED: July 30, 2026

CLAIRE CARPENTER-SEGUIN

[1] https://www.cbpp.org/research/income-security/income-support-helps-families-meet-childrens-needs-and-reduces-child.