# EXHIBIT 30

**SUPPLEMENTAL DECLARATION OF STACY L. RODGERS, ACTING SECRETARY, MARYLAND DEPARTMENT OF HUMAN SERVICES**

I, Stacy L. Rodgers, declare under the penalty of perjury pursuant to 28 U.S.C. § 1746 that the following is true and correct:

1. I am the Acting Secretary of the Maryland Department of Human Services (MDHS). I am submitting this Declaration to supplement my declaration dated July 28, 2026 regarding information I have learned since then.
2. After this action was filed, I learned that in September 2025, the U.S. Department of Health and Human Services' (HHS) Administration for Children and Families (ACF) shared individual-level TANF data collected from states for federal Fiscal Year 2024 with the Department of Homeland Security (DHS) (the "September 2025 Data Transfer"). I understand that ACF asserts that this data sharing was for "program integrity" purposes and was authorized by Routine Use 7 of the then-effective system of records notice, which governs disclosure of information to "contractors, grantees, consultants, or volunteers."
3. To the best of my knowledge, neither MDHS nor any TANF recipients were ever notified about the September 2025 Data Transfer and that Transfer was not otherwise made public prior to the initiation of this lawsuit. I am not aware of any other instance in which ACF has shared any TANF data collected from States with DHS. Maryland faces harm stemming from the September 2025 Data Transfer and the policy underlying it.

4. MDHS must undertake the process of legal review to determine whether we must update our notice of information disclosures going forward based on ACF's assertion that state TANF data can be transferred to DHS and other entities as "contractors, grantees, consultants, or volunteers." MDHS must also undertake the process of legal review to determine whether we must provide notice to past TANF recipients whose data may have been provided to DHS as part of the September 2025 Data Transfer. This legal review process is itself time and resource intensive.

5. Any updates to Maryland's application or individualized notice to former recipients would be resource intensive and costly, because this would be a manual process that has not been previously automated in our information technology systems. This legal review and compliance process is in addition to, not instead of, the process that MDHS must undertake to review its disclosures in light of the new SORN.

6. DHS maintains the data from Plaintiff States that it obtained in the September 2025 Data Transfer, and both DHS and ACF maintain the ability to use that data. Public awareness that this data sharing has already occurred at least once without any notice, and that the data can be used by DHS, is likely to have a chilling effect on future TANF applications and use.

   We believe that customers would be more cautious in sharing their personal information with the state government if they know that it might be used for an entirely unrelated purpose by a federal agency not expressly authorized by them in their original information submission. Further, public awareness that the data sharing with DHS or other entities will continue under ACF's newly disclosed policy of

sharing data with DHS or other entities under Routine Use 7 is likely to have the same chilling effect as the new SORN on future TANF applications and use.

7. If fewer individuals participate in TANF, Maryland and its state taxpayers will suffer significant harm. Beyond basic recurring cash assistance, TANF offers eligible households critical resources such as childcare scholarships, transportation assistance like bus passes, and vital workforce development supports so that they may attain a higher paying job. These programs facilitate occupational training and barrier remediation services that are compromised if a resident loses access to benefits. Consequently, any reduction in participation would likely result in increased material hardship for Maryland families, including an increase in childhood poverty, which is associated with significant harms later in life, including an increased fiscal burden to the state through longer-term or recurring public assistance demands.

8. To further supplement paragraph 7 in our July 28, 2026 Declaration, Maryland uses TANF in a hybrid federal-state-funded program called Temporary Cash Assistance (TCA), which is aimed primarily at eligible families with dependent children. State-funded components include an additional $45 per month per person benefit supplement, and various funding allocations for two-parent households. This monthly cash support is specifically focused on low-income families navigating employment transitions or recovering from recent federal policy changes. This means that any impact on customers declining to participate in TANF will hurt their ability to receive state-specific benefits.

9. This data sharing risks future harm to Plaintiff States, including that ACF may take enforcement action based on its erroneous use of this data through action by non-ACF federal agency actions. Marylanders have seen unprecedented use of customer data by DHS in our public schools, and other public spaces which have sharply increased distrust in what the federal government may do with personal information.

DATED: August 21, 2026

Stacy L. Rodgers

Stacy L. Rodgers
Acting Secretary of Human Services