# EXHIBIT 31

# SUPPLEMENTAL DECLARATION OF DR. SHANEEN MOORE

I, Dr. Shaneen Moore, declare under the penalty of perjury pursuant to 28 U.S.C. § 1746 that the following is true and correct:

1. I am the Assistant Commissioner of the Family Wellbeing Administration at the Minnesota Department of Children, Youth, and Families ("DCYF"). I am submitting this Declaration to supplement my declaration dated July 31, 2026 regarding information I have learned since then.

2. After this action was filed, I learned for the first time that, in September 2025, ACF shared individual-level TANF data collected from states for Fiscal Year 2024 with the Department of Homeland Security (DHS) (the "September 2025 Data Transfer"). I understand that ACF asserts that this data sharing was for "program integrity" purposes and was authorized by Routine Use 7 of the then-effective system of records notice, which governs disclosure of information to "contractors, grantees, consultants, or volunteers."

3. To the best of my knowledge, neither DCYF nor any TANF recipients were ever notified about the September 2025 Data Transfer and that Transfer was not otherwise made public prior to in the initiation of this lawsuit. I am not aware of any other instance in which ACF has shared any TANF data collected from States with DHS. Minnesota faces harm stemming from the September 2025 Data Transfer and the policy underlying it.

4. DCYF must undertake the process of legal review to determine whether we must update our disclosures going forward based on ACF's assertion that state TANF data can be transferred to DHS and other entities as "contractors, grantees, consultants, or volunteers." DCYF

must also undertake the process of legal review to determine whether we must provide notice to past TANF recipients whose data may have been provided to DHS as part of the September 2025 Data Transfer. This legal review process is itself time and resource intensive. And any updates to Minnesota's application or individualized notice to former recipients would be resource intensive and costly, because updating the Combined Application Form and data privacy notices requires legal research, drafting and collaboration across a wide array of programs and divisions. Minnesota's Combined Application Form is not solely an application for applying for TANF-funded cash assistance. The Combined Application Form facilitates access to multiple programs including SNAP (which requires review from USDA-FNA), adult cash programs (which requires review from Minnesota's Department of Human Services), refugee programs and MFIP (TANF). This legal review and compliance process is in addition to, not instead of, the process that DCYF must undertake to review its disclosures in light of the new SORN. The most recent update to Minnesota's Combined Application Form was a process that took approximately six months to complete. The number of changes to the use of TANF data in the new SORN would require review and analysis that would likely take longer than six months.

5. DHS maintains the data from Plaintiff States that it obtained in the September 2025 Data Transfer, and both DHS and ACF maintain the ability to use that data. Public awareness that this data sharing has already occurred at least once without any notice, and that the data can be used by DHS, is likely to have a chilling effect on future TANF applications and use. This undermines public trust in TANF and other public assistance programs because the public cannot trust the communications, processes and procedures that states and ACF purport to use to administer TANF. Similarly, disclosing data without permission and without awareness reduces trust in other safety-net programs such as public school registrations, free community health

clinics, and immunizations which compounds public health and poverty related issues. The public cannot rely on or trust that the information provided to them is correct, and this could lead to an additional chilling effect. Further, public awareness that the data sharing with DHS or other entities will continue under ACF's newly disclosed policy of sharing data with DHS or other entities under Routine Use 7 is likely to have the same chilling effect as the new SORN on future TANF applications and use. If fewer individuals participate in TANF, Minnesota will suffer significant harms. Without cash assistance, families may struggle to afford basic needs like food, housing, utilities, diapers, and clothing, increasing homelessness and food insecurity. If TANF participation decreases, the strain on other public systems increases such as emergency shelters, food banks, Medicaid, schools, and hospitals. Families may forego basic needs if TANF participation drops. Some families receive a "child-only" TANF grant because the child is a United States citizen and eligible for TANF while their parent is ineligible for TANF due to immigration status. If families are concerned that their information has been shared and will be shared without permission, they may forego support for their children who are legally eligible to receive it.

6. This data sharing for "program integrity" purposes also risks future harm to Plaintiff States, including that ACF may take enforcement action based on its erroneous use of this data. DHS already has that data in its hands, making it possible that the newly announced oversight and enforcement activities could be imminent. Without more information about the data sharing ACF has already undertaken, there is a risk of potential data errors or false matches which may incorrectly flag eligible recipients as being ineligible. Because the data was shared without our knowledge, Minnesota cannot be sure how the data is being used by DHS.

I declare under penalty of perjury under 28 U.S.C. 1746 that the foregoing is true and accurate to the best of my ability.

Executed this 21st day of August, 2026 in Minneapolis, Minnesota.

Dr. Shaneen Moore
Assistant Commissioner, Family Wellbeing Administration
MN Department of Children, Youth, and Families