# EXHIBIT 32

**SUPPLEMENTAL DECLARATION OF STEPHEN CHA, MD, MHSR**

I, Stephen Cha, MD, MHSR, declare under the penalty of perjury pursuant to 28 U.S.C. § 1746 that the following is true and correct:

1. I am the Commissioner of the New Jersey Department of Human Services ("NJDHS"). I am submitting this Declaration to supplement my declaration dated July 31, 2026, with information I have learned since then.

2. After this action was filed, I learned for the first time that, in September 2025, ACF shared individual-level TANF data collected from states for Fiscal Year 2024 with the United States Department of Homeland Security ("USDHS") (the "September 2025 Data Transfer"). I understand that ACF asserts that this data sharing was for "program integrity" purposes and was authorized by Routine Use 7 of the then-effective system of records notice, which governs disclosure of information to "contractors, grantees, consultants, or volunteers."

3. To the best of my knowledge, neither NJDHS nor any TANF recipients were ever notified about the September 2025 Data Transfer and that Transfer was not otherwise made public prior to the initiation of this lawsuit. I am not aware of any other instance in which ACF has shared any TANF data collected from States with USDHS. New Jersey faces harm stemming from the September 2025 Data Transfer and the policy underlying it.

4. NJDHS must now undertake the process of reviewing our current disclosures to determine whether those disclosures remain accurate based on ACF's assertion that state TANF data can be transferred to USDHS and other entities as "contractors, grantees, consultants, or volunteers." NJDHS must also undertake the process of determining whether it should provide notice to past TANF recipients whose data may have been provided to USDHS as part of the September 2025 Data Transfer. This review process is itself time and resource intensive. And any

updates to New Jersey's TANF application or other TANF related disclosures, or individualized notice to former recipients, would be resource intensive and costly. That is because such a change could involve hundreds of forms and notices that are manually and system generated statewide, in addition to the paper and online application, which request TANF applicant information, including but not limited to, TANF applicants' physical or mental illnesses. In addition, NJDHS would have to revisit its preferred choice of TANF reporting methodology if NJDHS determines that there is a greater risk of TANF recipient information being shared to outside entities without notice. This review and compliance process is in addition to, not instead of, the process that NJDHS must undertake to review its disclosures in light of the new System of Records Notice (SORN). The SORN process purportedly provides states with an opportunity to analyze and plan for any anticipated changes in ACF's disclosure policies. Expanding ACF's authority to share TANF recipient information outside of the SORN process did not consider whether NJDHS's current disclosure language sufficiently covers all potential uses to meet its legal obligations to TANF recipient and precluded NJDHS from any meaningful review.

5. USDHS maintains the data from Plaintiff States that it obtained in the September 2025 Data Transfer, and both USDHS and ACF maintain the ability to use that data. Public awareness that this data sharing has already occurred at least once without any notice, and that the data can be used by USDHS, is likely to have a chilling effect on future TANF applications and use. TANF applicants and recipients provide NJDHS with sensitive information with the expectation that it is used only for eligibility and program evaluation purposes. Applicants and recipients will reasonably conclude that providing their information will place them at a much higher risk for a data breach, investigation or similar privacy intrusion. Further, public awareness that the data sharing with USDHS or other entities will continue under ACF's newly disclosed

policy of sharing data with USDHS or other entities under Routine Use 7 is likely to have the same chilling effect as the new SORN on future TANF applications and use. If fewer individuals participate in TANF, New Jersey will suffer significant harms in not being able to reach those most in need of support services and will further strain the resources of charitable or other private assistance, resulting in more impoverished families.

6. This data sharing for "program integrity" purposes also risks future harm to New Jersey, including that ACF may take enforcement action based on its erroneous use of this data. USDHS already has that data in its hands, making it possible that the newly announced oversight and enforcement activities could be imminent. It is reasonable for TANF applicants and recipients to assume that USDHS has already processed data from previous disclosures and analyzed that data to identify persons for immigration enforcement actions. While USDHS has stipulated as part of this litigation that it will not use or rely on any TANF data obtained by ACF from Plaintiff States, TANF applicants and recipients will now associate the TANF program with immigration enforcement based on this improper sharing, reinforcing the notion that ACF, as well as USDHS, are more concerned with immigration enforcement than with protecting a family's welfare and privacy rights.

DATED: August 21, 2026



Stephen Cha, MD, MHSR
NJDHS Commissioner