# EXHIBIT 33

**DECLARATION OF NIKI KOZLOWSKI**

I, Niki Kozlowski, declare under the penalty of perjury pursuant to 28 U.S.C. § 1746 that the following is true and correct:

1. I am the Income Support Division Director and Acting Deputy Secretary of the New Mexico Health Care Authority (HCA).

2. In this role, I oversee the administration of most public assistance programs for the State of New Mexico, including eligibility and enrollment functions for the Temporary Assistance for Needy Families (TANF) program and oversight of New Mexico's TANF block grant.

3. The New Mexico Health Care Authority (HCA) is the state's largest health and human services agency. The HCA administers programs that affect more than 40 percent of New Mexicans, including Medicaid, the Supplemental Nutrition Assistance Program (SNAP), TANF, and other health and human services programs. The HCA's mission is to ensure that New Mexicans attain their highest level of health by providing whole-person, cost-effective, accessible, and high-quality health care and safety-net services.

4. I am familiar with the information in the statements set forth below either through personal knowledge, consultation with HCA staff, or from my review of relevant documents and information.

***TANF in New Mexico***

5. HCA administers TANF in New Mexico.

6. TANF is a block grant program that provides billions of dollars in federal funds to states, who in turn provide cash assistance and non-cash benefits and services to low-income families with children. It is one of the largest sources of cash assistance to low-income families and a cornerstone of New Mexico's anti-poverty work. New Mexico receives approximately

$124.4 million annually in TANF funding and provides 17,207 New Mexico residents with basic recurring cash assistance benefits.

7. TANF is especially important in New Mexico because it provides a critical safety net for families with children living in deep poverty while also supporting employment and self-sufficiency. Although the program serves a relatively small share of the state's population, it plays an outsized role in stabilizing vulnerable families and preventing more severe economic hardship. Because most TANF recipients are children, the program helps reduce the effects of poverty during childhood. Research consistently shows that stable family income is associated with better health outcomes, improved school attendance and performance, reduced housing instability, and a lower risk of involvement with child welfare systems.

New Mexico also utilizes its TANF block grant for supportive programs beyond monthly cash assistance. The state invests a substantial portion of its TANF funding into services that help families become self-sufficient and that support child well-being, including employment and training, educational programs for parents, childcare support, and bonuses for people transitioning off TANF because they have achieved employment stability.

***New Mexico's TANF Fraud Prevention Procedures***

8. HCA, on behalf of New Mexico, ensures that robust procedures are in place to prevent ineligible TANF benefit distributions and address erroneous payments or attempted fraud.

9. To ensure that TANF funds are issued only to TANF eligible recipients, HCA has a robust eligibility determination process that must be followed by applicants and recipients of recurring and emergency cash assistance and non-cash benefits, and clearly defined program requirements for other TANF funded services and supports. Further, HCA conducts reviews of eligibility caseworkers and ensures program compliance, in accordance with federal and state statutes, rules and regulations. HCA provides extensive direction and support via on-site

monitoring, policy directives, meetings, training, phone calls, and emails to caseworkers to help guide them in ensuring the accuracy of benefit determinations.

10. Applicants and recipients of cash assistance benefits must document to HCA that they are TANF eligible as part of the application and recertification process. Additionally, if a household experiences a significant change in between certifications, they are required to report it to HCA within 10 days to ensure that the household continues to be eligible for assistance.

11. The eligibility determination process includes an interview conducted by HCA with the applicant and recipient. As part of this determination / redetermination process, appropriate documents and verifications are collected by HCA to determine eligibility. Each applicant and recipient must, as a condition of eligibility for themselves or others in the applying household, furnish evidence to HCA to provide verification of those factors which affect eligibility and benefit amount, including identity, residence, family composition, housing costs, income and resources, and United States citizenship or, if not a United States citizen, evidence of satisfactory immigration status for TANF eligibility. HCA also utilizes electronic data matches, federal databases, and state systems to validate and check documentation provided by TANF applicants.

12. Additionally, HCA utilizes approved federal and state processes to validate and monitor for compliance with program eligibility rules for each applicant and recipient of TANF funded cash assistance. New Mexico utilizes the Front End Detection System (FEDS) program, Social Security data matches, employment and unemployment databases, the IRS Income and Eligibility Verification System (IEVS), motor vehicles data, child support data, the DHS Systematic Alien Verification for Entitlements (SAVE) system, Vital Records, and databases that flag potential duplicate assistance. These systems have specified indicators that could uncover potential fraud or misleading/erroneous statements on the application. Any indicators that cannot

be resolved by the eligibility worker are referred back to the applicant to provide additional documentary evidence prior to case approval.

13. HCA ensures that various computer matches take place to confirm eligibility, in compliance with several federal laws and regulations. HCA utilizes the Income Eligibility Verification System (IEVS), as required by 42 U.S.C. § 1320b-7 to confirm continuing eligibility and benefit levels. HCA uses IEVS to receive federal tax information, which is used to confirm whether an individual's income and resources permit them to be eligible for TANF. Federal law and the written agreements that HCA signs to access this income and eligibility information require HCA to confirm the accuracy of any red flags raised by such data matches, and to provide affected individuals an opportunity to contest these data findings, before terminating, denying, suspending or reducing benefits to an applicant or recipient. Accordingly, cases that have income exceeding TANF income and resource levels are denied.

14. HCA reviews the Public Assistance Reporting Information System (PARIS) Interstate match to identify if an individual is receiving benefits in more than one state at the same time. HCA also conducts a Border Match to identify duplication of benefits. HCA refers match results to its Office of Inspector General (OIG) for investigation and appropriate case action.

15. HCA conducts a Prison Match to identify cash assistance recipients who are incarcerated and have been sentenced to a term in prison as reported to New Mexico State Corrections or a federal prison as reported on the SSA Federal Prison file. HCA takes prompt case action to close such cases.

16. HCA also undertakes a quarterly match to identify individuals whose Electronic Benefits Transfer (EBT) cash transactions are conducted 100% out of state during a calendar quarter which may indicate residence in a state other than New Mexico. The matches are then

referred to OIG for investigation. Based upon the results of such investigations, HCA takes appropriate case action.

17. HCA performs monthly matches of active TANF recipients with the federal National Directory of New Hires (NDNH), which contains nationwide W-4 information. The TANF matches involve all active adult recipients. NDNH matches are verified through a third-party vendor or by sending Manual Employment Verification (MEV) forms to employers. Responses from the third-party vendor and MEVs are provided to HCA for investigation and appropriate case action.

18. New Mexicans who suspect TANF fraud can report it directly to HCA through its Report Fraud portal, by phone through the OIG's dedicated Fraud Line, or through the OIG's dedicated email address. OIG takes appropriate investigatory action and may refer the case for closure or to impose a sanction, Intentional Program Violation, or TANF claim.

19. In addition to computer matches, HCA establishes claims to recover any benefits issued in error when it is determined that fraud has occurred. When HCA determines it has issued benefits to a recipient as a result of fraud, the facts used in the determination are reviewed. If the suspected fraud is substantiated by the available evidence, HCA seeks to recover any benefits issued in error. If the recipient is found to have committed an Intentional Program Violation (IPV), the claim is established and recovery is pursued from the recipient. If a recipient is found to have committed an IPV, the recipient may be disqualified from participation in the program.

20. Moreover, as part of its internal controls, HCA conducts work participation verification reviews, which is a quality assurance process that selects representative samples of work-eligible assistance cases for purposes of verifying the accuracy of reporting and compliance

with federal and state regulations. HCA conducts a yearly review of a sample of cases according to New Mexico's HHS approved Work Verification Plan.

***New Mexico's Process for Verifying Eligibility for TANF Assistance Based on Immigration Status***

21. New Mexico uses the federal Systematic Alien Verification for Entitlements (SAVE) system to verify an applicant or recipient's qualified alien status.

22. Through the TANF application process, the applicant provides documentation of their immigration status. The SAVE system is accessed directly through New Mexico's eligibility system, ASPEN. The information is updated in ASPEN and a request for SAVE is triggered. SAVE then compares this information against Department of Homeland Security (DHS) immigration records. SAVE may immediately confirm immigration status and document validity. In instances where SAVE cannot immediately verify this information, the caseworker submits an additional electronic verification request and DHS reviews the more detailed immigration record. Based on the verification from SAVE, the HCA then determines whether the applicant meets the TANF citizenship or qualified non-citizen requirements.

23. All SAVE records used for the TANF eligibility determination are maintained in ASPEN, the state's eligibility and enrollment system, as part of the applicant's case record.

24. HCA caseworkers receive extensive training on TANF regulations, which define who is considered a U.S. citizen or U.S. national, which categories of qualified non-citizens are eligible, federal waiting periods, special eligibility rules for certain immigration statuses, how to identify acceptable immigration documents, how to determine whether documentation is sufficient, how to utilize the SAVE system, how to interpret SAVE responses, and when to request additional verification. In addition to formal instruction, eligibility caseworkers also receive classroom training on eligibility policy, hands-on training, coaching from experienced supervisors,

job aids and policy manuals, and ongoing refresher training as regulations change. New Mexico also does complete case reviews to determine that eligibility rules and regulations are being followed. New Mexico documents all actions taken and what verifications were used for eligibility purposes

25. As required by law, New Mexico imposes safeguards to restrict the use and disclosure of information about individuals and families receiving assistance under TANF.

26. Federal and state law require HCA to limit the use and disclosure of TANF information to purposes directly connected with administering the program. New Mexico regulations specify that TANF case files are maintained solely for administration of public assistance programs.

27. HCA could have never anticipated the new routine use of TANF data announced in the SORN and therefore had no opportunity to draft disclosures to prior TANF recipients to disclose this new routine use of their data.

28. New Mexico provides assurances to TANF applicants regarding how their personal information will be collected, used, verified, and protected. These assurances come from state and federal requirements. Applicants are informed that the information they provide will be used to determine eligibility for TANF, calculate benefit amounts, verify continued eligibility, and administer public assistance programs as authorized by law. Information may not be collected for unrelated purposes. Applicants are advised that HCA may verify information by comparing it with records from other databases and agencies, and they are notified that these records are confidential. Information is only released as permitted by federal and state law, and access is limited to individuals administering public assistance programs.

***Federal Oversight of New Mexico TANF Program***

29. Pursuant to federal statute and regulations, HCA provides certain data on families receiving TANF assistance to ACF on a quarterly basis, including quarterly reporting, the TANF Annual Report, and quarterly financial reports.

30. Among other things, HCA provides ACF with the data fields specified in a publication titled “ACF-199 TANF and ACF-209 SSPMOE Data Reporting Instructions,” OMB Control Number 0970-0338. These include, for example, social security number, date of birth, and, as to immigration status, an individual’s status as either “U.S. Citizen,” “Qualified alien,” or “Unknown.”

31. HCA undertakes sample TANF data collection activities, consistent with 42 U.S.C. § 611(a)(1)(B) and 45 C.F.R. § 265.5. On a monthly basis, HCA uses random sampling to select a sufficient number of TANF/Maintenance of Effort (MOE) cases to meet federal reporting requirements.

32. Pursuant to the federal Single Audit Act, HCA engages an external auditor with respect to its TANF program. HCA conducts a federal single audit annually. Depending on the Office of Management and Budget (OMB), guidance under 2CFR 200.518 risk-based approach to identify which federal programs are “major programs” for audit purposes.

33. There has historically been minimal federal oversight of New Mexico’s TANF program beyond the Single Audit and required federal reporting described above.

34. To my knowledge, in the past 10 years, ACF has never performed any of the following activities with respect to New Mexico’s TANF Program: program integrity reviews, program integrity projects, additional audits beyond the Single Audit, or periodic reviews of policies and procedures.

***TANF SORN***

35. I understand that on June 23, 2026, U.S. Administration for Children and Families (ACF), which sits within the U.S. Department of Health and Human Services (HHS), published a System of Records Notice ("SORN") regarding the Temporary Assistance for Needy Families (TANF) program. 91 Fed. Reg. 37406 (June 23, 2026).

36. ***First***, the TANF SORN adds two new purposes. It replaces one of the prior purposes of the TANF Data System of Records ("to determine whether grantees are meeting certain requirements prescribed by the Social Security Act, including work participation and time-limit requirements") with the following: "to determine whether grantees are ensuring that TANF recipients are eligible in accordance with the requirements of Title IV–A of the Social Security Act".

37. The TANF SORN adds a new additional purpose:

> to ensure and confirm grantee compliance with TANF program requirements through HHS agency oversight activities including but not limited to program integrity reviews (e.g. comprehensive assessments of how grantees administer TANF programs and follow statutory requirements), additional audits (e.g. financial audits, programmatic audits, and fraud investigations), and monitoring (e.g. regular review of data reports, on-site or virtual visits to TANF agencies, periodic review of policies and procedures). The purpose is to ensure compliance with all TANF program requirements including but not limited to the work participation rate and time-limits, the requirement to provide complete and accurate data, and the requirement to verify TANF recipients' citizenship or immigration status in records maintained by the Department of Homeland Security (DHS), U.S. Citizenship and Immigration Services (formerly the U.S. Immigration and Naturalization Service (INS)). See 45 U.S.C. 265.7(b); 42 U.S.C. 1320b–7(d); 6 U.S.C. 552(d).

38. ***Second*,** the TANF SORN significantly broadens the categories of records included in the system. Now, the TANF Data System of Records includes not only information "obtained from TANF grantee agencies" (*i.e.*, State agencies), but also "verification information" obtained

"from other HHS records; and from other federal or state agencies or entities engaged to assist ACF with program integrity reviews or projects." 91 Fed. Reg. at 37408.

39. ***Third***, the TANF SORN adds a new "routine use" to the TANF Data System of Records that provides broad authority for ACF to share the records with other states, other federal agencies, and other unspecified "entit[ies]":

> *Disclosure to Another Agency/Entity Engaged to Assist ACF With Program Integrity Reviews or Projects, for TANF Program Compliance Purposes.* Records may be disclosed from this system of records to another federal or grantee agency or entity engaged by ACF (*e.g.,* DHS or TANF program administrators) to assist ACF with program integrity reviews or projects, to verify whether TANF grantee agencies are complying with TANF program requirements, including verifying citizenship or immigration status.

40. ***Fourth***, the TANF SORN lists new statutory authority. In addition to Title IV-A of the Social Security Act, 42 U.S.C. §§ 601-619 (the "TANF Statute"), the TANF SORN adds two additional statutes: 42 U.S.C. § 1320b–7 and 8 U.S.C. § 1373.

***HARM To New Mexico***

41. Without Court intervention, New Mexico faces harm stemming from the TANF SORN.

42. The TANF SORN states that one of the purposes of the modified system of records is "to ensure and confirm grantee compliance with TANF program requirements through agency oversight activities including but not limited to program integrity reviews (e.g. comprehensive assessments of how grantees administer TANF programs and follow statutory requirements), additional audits (e.g. financial audits, programmatic audits, and fraud investigations), and monitoring (e.g. regular review of data reports, on-site or virtual visits to TANF agencies, periodic review of policies and procedures)."

43. As noted above, apart from the Single Audit and the data reporting required by the TANF Statute, *see* 42 U.S.C. § 611, ACF has not historically conducted any of the other listed

"agency oversight activities." ACF doing so as a result of the TANF SORN would require New Mexico to expend time and resources responding to new ACF requests. Any additional information required to be provided by New Mexico would necessitate a time- and labor-intensive process of collecting, collating and organizing documentation from the ASPEN eligibility system though individualized case reviews. This would be separate from the process that, as noted above, New Mexico already engages in on a regular basis as part of its efforts to monitor caseworkers to ensure that they follow all state and federal requirements regarding TANF eligibility.

44. As to immigration status verification in particular, these agency oversight activities are likely to lead to misleading and improper results.

45. Earlier this year, ACF announced that it had "froze[n] access to" TANF funds in five states. *See* https://www.hhs.gov/press-room/hhs-freezes-child-care-family-assistance-grants-five-states-fraud-concerns.html. If the agency oversight activities were to result in similar action, that would likely have significant programmatic and operational impacts for New Mexico, with likely staffing reductions and the potential elimination of non-mandated services.

46. Similarly, HHS announced last year that it was reversing decades of agency policy and intends to share data from the Medicaid program with DHS and Immigration and Customs Enforcement (ICE) for use in immigration enforcement activities. *See* HHS Centers for Medicare & Medicaid Services, *Notice of Medicaid Information Sharing Between the Centers for Medicare & Medicaid Services and the Department of Homeland Security* (Nov. 25, 2025), available at https://www.federalregister.gov/documents/2025/11/25/2025-20911/notice-of-medicaid-information-sharing-between-the-centers-for-medicare-and-medicaid-services-and. In this environment, the SORN's announcement that ACF plans to begin sharing New Mexico's TANF recipients' data with DHS will cause additional harm to New Mexico, as it risks eroding the trust

that HCA has developed with immigrant communities in New Mexico. HCA has always required TANF applicants who are not citizens to attest that they have an eligible immigration status and to provide supporting documentation of that status; and has told applicants that HCA would verify that status with the federal government. But HCA has also encouraged eligible households to take advantage of TANF and other assistance to help raise their children and families out of poverty. If ACF begins sharing TANF data with DHS, then community fears that DHS will use data provided for the sole purpose of determining TANF eligibility for purposes other than valid eligibility checks. This will severely impede the public trust and disenfranchise eligible individuals from the TANF program.

47. Further, the TANF SORN will erode the trust that New Mexico has developed with immigrant communities and deter individuals from participating in TANF. New Mexico has always required TANF applicants who are not citizens to attest and demonstrate that they have an eligible immigration status, and has told applicants that State and local TANF administrators would confirm that status with the federal government. But New Mexico has also encouraged eligible households—including families with U.S. citizen children who are and have always been eligible for TANF— to take advantage of TANF and other assistance to help raise their children and families out of poverty. New Mexico has made assurances to TANF recipients that their information will be safeguarded and subject to disclosure only in narrow, defined circumstances, as required by statute. If ACF can proceed with sharing TANF data with DHS, without clearly defined purposes and limits required by federal law, then community fears that DHS will use that data for other purposes will impede that public trust and chill participation in New Mexico's TANF programs by citizens and qualified non-citizens alike.

48. This chilling effect will extend beyond immigration-related concerns to individuals who have concerns about the broad authority asserted in the SORN to share their sensitive personal information with any federal, State, or private entity. Individuals are less likely to participate in TANF if they believe that doing so will expose the sensitive personal information of themselves and their family members to widespread disclosure. Such concerns are bolstered by public reporting into DHS's efforts to use consolidated data from State benefit programs and other sources to support a variety of surveillance activities. Further, any potential data breach or mishandling of this data by these entities would have the potential to further erode trust in the States' TANF programs.

49. If fewer individuals participate in TANF, New Mexico will suffer significant harms. New Mexico has high rates of child poverty, housing instability, and food insecurity, all of which will be exacerbated as families forego TANF benefits.

50. New Mexico will also incur a financial cost in updating communications with TANF applicants or participants that notify TANF applicants or participants of how their personal data is collected, used, and shared. Such changes require revision to eligibility notices and all application formats, requiring extensive legal review and IT programming changes.

DATED: AUGUST 4, 2026

Niki Kozlowski

NIKI KOZLOWSKI

DECLARANT