# EXHIBIT 34

# SUPPLEMENTAL DECLARATION OF RAJNI CHAWLA

I, Rajni Chawla, declare under the penalty of perjury pursuant to 28 U.S.C. § 1746 that the following is true and correct:

1. I am the Executive Deputy Commissioner of the New York State Office of Temporary and Disability Assistance (OTDA). I am submitting this Declaration to supplement my Declaration dated August 3, 2026, regarding information I have learned since then.

2. Since the filing of my August 3rd Declaration, a Joint Notice and Motion for Briefing Schedule was filed on August 16, 2026, which detailed how ACF shared individual-level TANF data collected from states for Fiscal Year 2024 with the Department of Homeland Security (DHS) (the "September 2025 Data Transfer") and that ACF asserts that this data sharing was for "program integrity" purposes. Additionally, ACF also asserts therein that it was authorized by Routine Use 7 of the then-effective system of records notice, which governs disclosure of information to "contractors, grantees, consultants, or volunteers."

3. It was through that filing that I learned of the September 2025 Data Transfer.

4. To the best of my knowledge, neither OTDA nor any TANF recipients were ever notified about the September 2025 Data Transfer and such data transfer was not otherwise made public prior to the initiation of this lawsuit. I am not aware of any other instance in which ACF has shared any TANF data collected from states with DHS. New York faces harm stemming from the September 2025 Data Transfer and the policy underlying it.

5. Should disclosure of sensitive and confidential information be found to have occurred, OTDA would need to analyze and determine whether we must update our disclosure notification provisions going forward based on ACF's assertion that state TANF data can be transferred to DHS and other entities as "contractors, grantees, consultants, or volunteers."

6. Such a disclosure also would require OTDA to undertake the process of legal review to determine whether we must provide notice to current and past TANF recipients whose data may have been provided to DHS as part of the September 2025 Data Transfer. This analysis and legal review process would be time and resource intensive. Additionally, any updates to New York's application for benefits form, recertification forms, or individualized notice to current and former recipients would also be resource intensive and costly.

7. Updates to New York's disclosure and notice provisions would involve system and form updates, all of which would require a careful orchestration of program, systems, legal and IT staff coordination to ensure that the applications and recertification forms have the necessary language to describe the disclosure of the data from ACF to DHS. (*See also,* Chawla Decl. ¶ 57, August 3, 2026 (describing, harm associated with updating communications with TANF applicants). As for the individualized notices to former or current recipients, a legal determination would first need to be made regarding whether DHS's use of the information OTDA provided, in accordance with reporting requirements, was authorized, as they claimed it to be, and if not, what information was actually shared. As OTDA is unclear about the specific data ACF shared with DHS, OTDA cannot even begin the analysis at this time.

8. This legal review and compliance process is in addition to, not instead of, the process that OTDA must undertake to review its disclosures in light of the new SORN. Since this information was disclosed in the past, any necessary legal review would need to be considered in accordance with the laws at the time of disclosure, which does not include the current authorization to provide such information to DHS. The review would need to establish whether the disclosure was authorized or not, what type of information was disclosed, and whether disclosure was a breach that requires the State to notify recipients of the disclosure or if the breach occurred with

ACF and it is beyond the responsibility of the State to notify recipients. There is potential litigation risk if it is discovered that a recipient's information was used for DHS enforcement purposes, outside the scope of the current consent language authorizations, and a recipient or their household member alleges OTDA is responsible for that harm.

9. Further, public awareness that this data sharing has already occurred at least once without any notice, and that the data can be used by DHS, is likely to have a chilling effect on future TANF applicants who may now be hesitant to participate in much needed public benefit programs that assist with economic security for fear that their information, that they lawfully provided without anticipation of it being shared with DHS, will be used against themselves or others for purposes beyond those for which they gave consent. (*See also,* Chawla Decl. ¶ 55, August 3, 2026, explaining the chilling effect that broad authority asserted in SORN over sharing sensitive personal information with any federal, State, or private entity).

10. Further, public awareness that the data sharing with DHS or other entities will continue under ACF's newly disclosed policy of sharing data with DHS or other entities under Routine Use 7 is likely to have the same chilling effect as the new SORN on future TANF applications and use. If fewer households with children participate in TANF, New York will suffer significant harms. Without critical TANF supports, families will lean on overstretched community organizations and charities. Children of parents too fearful to apply for benefits will suffer deprivations such as unstable housing and going without basic necessities. This type of hardship has long term negative impacts on the child, which carry over into adulthood, increasing the need for supports through school and emergency services. The lack of TANF is likely to increase housing insecurity, food insecurity, and job insecurity.

11. It would be expected that such insecurities from the loss of TANF support will also have downstream consequences and costs, such as increased shelter and healthcare costs, for the State of New York. (*See also*, Chawla Decl. ¶ 56, August 3, 2026, explaining the harm New York State will suffer if fewer individuals participate in TANF).

DATED: August 24, 2026

Rajni Chawla

RAJNI CHAWLA