# EXHIBIT 35

**SUPPLEMENTAL DECLARATION OF CARLA REYES**

I, Carla Reyes, declare under the penalty of perjury pursuant to 28 U.S.C. § 1746 that the following is true and correct:

1. I am the Assistant Secretary of the Economic Services Administration (ESA) of the Department of Social and Health Services (DSHS). I am submitting this Declaration to supplement my declaration dated July 29, 2026, regarding information I have learned s ince then.

2. After this action was filed, I learned for the first time that in September 2025, the Administration for Children and Families (ACF) shared individual-level Temporary Assistance for Needy Families (TANF) data collected from Washington State for Fiscal Year 2024 with the Department of Homeland Security (DHS) (September 2025 Data Transfer). I understand that ACF asserts that this data sharing was for "program integrity" purposes and was authorized by Routine use 7 of the then-effective System of Records Notice (SORN), which governs disclosure of information to "contractors, grantees, consultants, or volunteers." Privacy Act of 1974; System of Records, 89 Fed. Reg. 25880, 25882 (Apr. 12, 2024).

3. To the best of my knowledge, neither ESA nor any TANF recipients were notified about the September 2025 Data Transfer, and that transfer was not otherwise made public prior to the initiation of this lawsuit. I am not aware of any other instance in which ACF has shared any TANF data collected from Washington with DHS. Washington faces harm stemming from the September 2025 Data Transfer and the policy underlying it.

4. ESA must undertake the process of legal review to determine whether we must update our disclosures going forward based on ACF's assertion that state TANF data can be transferred to DHS and other entities as "contractors, grantees, consultants, or volunteers." Privacy Act of 1974; System of Records, 91 Fed. Reg. 37406, 37408 (June 23, 2026). ESA must also

undertake the process of legal review to determine whether we must provide notice to past TANF recipients whose data may have been provided to DHS as part of the September 2025 Data Transfer. This legal review process is itself time and resource intensive. And any updates to Washington's application or individualized notice to former recipients would be resource intensive and costly. Our application for benefits supports multiple federal and state funded programs beyond TANF, including the Supplemental Nutrition Assistance Program (SNAP). Research, evaluation and drafting must align with federal SNAP provisions, 7 C.F.R § 273.2(b), and involves coordination across all impacted programs and vetting with various partners. In addition, any adjustment to our application would require IT system changes. With our online application also supporting Medicaid program access, cross agency collaboration would be required. Individualized notices do not require as high level of effort, but do involve similar research, evaluation and drafting work, as well as coordination with other agencies within Washington State. This legal review and compliance process is in addition to, not instead of, the process that ESA must undertake to review its disclosures in light of the new SORN, as Washington must now assess whether it must inform TANF households of the past release of their information to DHS. This will require intensive policy analysis to ascertain next steps.

5. DHS maintains the data from Washington that it obtained in the September 2025 Data Transfer, and both DHS and ACF maintain the ability to use that data. Public awareness that this data sharing has already occurred at least once without any notice, and that the data can be used by DHS, is likely to have a chilling effect on future TANF applications and use. As I explained in my prior declaration, this sort of information sharing erodes the trust that ESA has developed with communities in Washington who need assistance. Further, public awareness that data sharing with DHS or other entities will continue under ACF's newly disclosed policy of sharing data with

DHS or other entities under Routine use 7 is likely to have the same chilling effect as the new SORN on future TANF applications and use. If fewer individuals participate in TANF, Washington will suffer significant harms. As documented in Washington's Blueprint for a Just and Equitable Future (10-year Plan to Dismantle Poverty in Washington), every dollar spent on poverty reduction efforts yields seven dollars in economic benefit for the State. *See* https://waeconomicjusticealliance.com/wp-content/uploads/2024/08/Final10yearPlan.pdf.

6. This data sharing for "program integrity" purposes also risks future harm to Washington, including that ACF may take enforcement action based on its erroneous use of this data. DHS already has that data in its hands, making it possible that the newly announced oversight and enforcement activities could be imminent.

Executed this _19th_ day of August 2026, in Olympia, Washington.

CARLA REYES
Assistant Secretary
Washington State Department of
Social and Health Services