**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| STATE OF NEW YORK, *et al.*,<br><br>*Plaintiffs*,<br><br>v.<br><br>ADMINISTRATION FOR CHILDREN AND FAMILIES, *et al.*,<br><br>*Defendants*. | Case No. 1:26-cv-02726-JEB |

**PLAINTIFF STATES' SUPPLEMENTAL SUBMISSION IN SUPPORT OF MOTION FOR A PRELIMINARY INJUNCTION AND STAY UNDER 5 U.S.C. § 705**

Plaintiff States respectfully submit this filing to supplement their responses to three questions regarding Plaintiffs' Article III standing that the Court posed at the preliminary injunction hearing on September 24, 2026.

***First***, the States wish to clarify that they understand *federal* law to require them to provide TANF applicants, beneficiaries, and other individuals with accurate information concerning the ways in which TANF information may be used and disclosed. In particular, the federal regulations implementing TANF explicitly provide that States must "publicize provisions governing the confidential nature of information about applicants and recipients, including the legal sanctions imposed for improper disclosure and use, *and . . . make these provisions available to applicants and recipients*." 45 C.F.R. § 205.50(a)(3)(i) (emphasis added). Further, those regulations instruct that "[a]ll persons with access to information obtained pursuant to the income and eligibility verification requirements under §§ 205.55 and 205.56," such as State employees, "will be advised of the circumstances under which access is permitted and the sanctions imposed for illegal use or

disclosure of the information." *Id.* § 205.50(a)(3)(iii). And, more broadly, they require each State to provide in its State plan that limitations on the use and disclosure of TANF information will be enforced "pursuant to State statute which imposes legal sanctions." *Id.* § 205.50(a)(1).[*]

By their terms, these regulations require the States to inform applicants, recipients, and other individuals of the new uses of TANF information authorized by the Disclosure Actions and to prevent the unlawful disclosure of such information. The Disclosure Actions dramatically alter "provisions governing the confidential nature of information about applicants and recipients"—including by adding Routine Use 10 and reimagining the scope of Routine Use 7—and change "the circumstances under which access is permitted." *Id.* § 205.50(a)(3)(i), (iii); *cf. District of Columbia v. U.S. Dep't of Agric.*, 444 F. Supp. 3d 1, 36 (D.D.C. 2020) (finding irreparable harm to the States based on costs associated with "[d]eveloping . . . notices" that "must comport with" federal regulatory requirements (citing 7 C.F.R. § 273.13)). Further, States have committed, in their State TANF plans, to implement laws imposing sanctions for the use or disclosure of information outside the scope of those disclosures. *See* 45 C.F.R. § 205.50(a)(1).

In addition, the Privacy Act requires notification to individuals of how their personal information may be disclosed—and here, the federal government has taken the position that the burden of notification falls on the States. In separate litigation challenging the 2026 TANF SORN, the federal government explicitly informed the court that, "under the [Privacy Act] it would be incumbent on the states to provide . . . notice" to individuals of Routine Use 10. ECF No. 45-41, Tr. of Prelim. Inj. Hearing, *Make the Road States v. DHS*, No. 26-cv-04713 (E.D.N.Y.), at 73:13–

[*] The States do not concede that these regulations are valid, *see* 42 U.S.C. § 617 (barring ACF from "regulat[ing] the conduct of States under this part . . . except to the extent expressly provided by this part"), but their validity is not at issue in this litigation, and they impose independent obligations that confer a basis for standing.

14. Defendants' brief in this case likewise suggests that the statutory obligation to provide "individualized notice" to beneficiaries of a new routine use is "a responsibility assigned, by Congress, to grantees." ECF No. 46, Opp. to Prelim. Inj. at 22 (citing 5 U.S.C. § 552a(e)(3); 42 U.S.C. § 611(a)(1)(A)). Consistent with those statements, multiple State declarants attest that they provide individuals assurances about the permissible uses of TANF information "[i]n accordance with . . . the Federal Privacy Act," CA-Witchey Decl. ¶¶ 24–25, or because of "federal requirements," NM-Kozlowski Decl. ¶ 28; *see also, e.g.*, DE-Horn Decl. ¶ 49 (State must review notices for compliance with "federal . . . law and regulations").

***Second***, even if federal law did not affirmatively require States to update their disclosures, the costs associated with doing so would still be cognizable as a basis for standing and irreparable harm. Absent unique circumstances such as efforts to manufacture standing, "[c]ourts regularly entertain actions brought by states and municipalities that face economic injury, even though those governmental entities theoretically could avoid the injury by enacting new legislation." *California v. Azar*, 911 F.3d 558, 574 (9th Cir. 2018). Courts in this Circuit are no different. *See New Jersey v. Env't Prot. Agency*, 989 F.3d 1038, 1046 (D.C. Cir. 2021) ("[T]his court's precedent . . . has not treated a state's ability to change its laws to evade injury as precluding standing to challenge EPA's actions under the Act."). It is undisputed that Plaintiff States have preexisting laws that require agencies to provide accurate privacy disclosures to beneficiaries, *see, e.g.*, CA-Witchey Decl. ¶¶ 24–25, and the theoretical possibility that they could avoid the costs of such disclosures by repealing their privacy laws does not make their injuries "self-inflicted." *See, e.g.*, *New Jersey*, 989 F.3d at 1047 (rejecting claim that harm was "self-inflicted" where "nothing here indicates that petitioner assumed authority to implement the PSD program in order to manufacture standing"); *Azar*, 911 F.3d at 574 (same, where State's contraceptive law was "not [directly] tethered to the

legislative decisions of other sovereigns"); *Texas v. United States*, 809 F.3d 134, 159 (5th Cir. 2015) (same, where "there is no allegation that Texas passed its driver's license law to manufacture standing"). That is particularly so where, as the declarants note, violations of such laws could give rise to legal claims against the States under those preexisting laws. *See* NY-Chawla Decl. ¶ 58.

In any event, Plaintiff States have suffered "injuries to their proprietary interests" that are independent of any state-law obligations. *Sierra Club v. U.S. Dep't of Transp.*, 125 F.4th 1170, 1181 (D.C. Cir. 2025). In reviewing whether private plaintiffs have standing in this context, courts "ask first 'whether the agency's action . . . injured the [organization's] interest,'" and second "whether 'the organization used its resources to counteract that harm.'" *Whitman-Walker Clinic, Inc. v. U.S. Dep't of Health & Hum. Servs.*, 485 F. Supp. 3d 1, 19 (D.D.C. 2020) (quoting *PETA v. U.S. Dep't of Agric.*, 797 F.3d 1087, 1094 (D.C. Cir. 2015) (citation modified)). Both inquiries are met here: Plaintiff States have a strong organizational interest in maintaining the trust of TANF recipients, which they have developed through "assurances . . . that [beneficiaries'] information will be safeguarded and subject to disclosure only in narrow, defined circumstances." CO-McMahon Decl. ¶ 51; *see also, e.g.*, CA-Witchey Decl. ¶ 40; DC-Campbell Decl. ¶ 45; NY-Chawla Decl. ¶¶ 53–54; WA-Reyes Decl. ¶ 46. And they must now use their "resources to counteract" the Disclosure Actions' harm to that interest by correcting their prior assurances and ensuring that TANF recipients are accurately apprised of Defendants' new disclosure plans—especially those recipients who have already submitted their personal data in reliance on those prior assurances. *Whitman-Walker*, 485 F. Supp. at 19; *see, e.g.*, CA-Witchey Decl. ¶¶ 47–49; CO-McMahon Decl. ¶¶ 51, 54; DC-Campbell Decl. ¶¶ 45, 48; NY-Chawla Decl. ¶¶ 54, 57; WA-Reyes Decl. ¶¶ 46, 49. Private plaintiffs routinely establish standing on such facts. *See, e.g.*, *Reddit, Inc. v. SerpAPI LLC*, No. 25-CV-8736, ___ F. Supp. 3d ___, 2026 WL 2210094, at *9 (S.D.N.Y. July 31, 2026) (holding

that forum operator alleged cognizable injury from web-scraping that "undermine[d] the protections for users' content that [the owner's] policies tout to users and would-be users").

***Third***, the States have submitted sufficient evidence—reinforced by the administrative record—that the Disclosure Actions are likely to chill individuals from participating in the TANF program. To establish that third parties are likely to respond to a challenged action in "predictable ways" that suffice to confer standing, *Dep't of Commerce v. New York*, 588 U.S. 752, 768 (2019), it is not necessary to supply accounts from such parties describing their likely reactions. Instead, courts typically look at whether individuals have "historically responded" to similar policies in similar ways, *id.*; whether the challenged policy creates incentives to respond in that manner, *see, e.g.*, *Davis v. FEC*, 554 U.S. 724, 734–35 (2008); and whether the policy's "purpose" is to provoke such a response, *see, e.g.*, *Diamond Alternative Energy, LLC v. EPA*, 606 U.S. 100, 112 (2025). Moreover, "[i]n considering the likely reaction of third parties," courts may consider "a variety of evidence," including "affidavits," "evidence in the administrative record" (including public comments), and arguments rooted in economics and common sense. *Competitive Enter. Inst. v. FCC*, 970 F.3d 372, 382 (D.C. Cir. 2020); *see, e.g.*, *Save Jobs USA v. DHS*, 942 F.3d 504, 509 (D.C. Cir. 2019) (explaining that courts may "rely[] on . . . public comments contained in the administrative record as evidence of standing" (internal quotation marks omitted)).

Here, every type of evidence suggests that, once individuals learn that ACF authorizes their households' personal TANF information to be transmitted *en masse* to DHS, many individuals will likely decline to participate in the program. Prior policies have "historically" had a similar effect: for instance, as numerous studies have demonstrated, a prior Trump administration policy that increased the likelihood that individuals' use of public benefits would subject them to adverse immigration consequences—in that case, potentially rendering them ineligible for a green card; in

this case, potentially subjecting them to removal—substantially reduced participation in a variety of federal programs. *See* Legal Aid Society Comment at 4–5 n.5, https://www.regulations.gov/comment/ACF-2026-0727-1340 (citing multiple studies); CA-Witchey Decl. ¶ 41. Basic logic dictates that the Disclosure Actions would generate the same incentive: individuals who lack lawful immigration status but may lawfully sponsor their citizen children to receive TANF benefits would not rationally reveal their personal information to ACF if they knew it would be turned over to DHS. *See, e.g.*, NY-Chawla Decl. ¶ 53. And, indeed, deterring participation by such individuals is the evident "purpose" of the 2026 SORN, which was issued in the immediate wake of a high-profile ACF report criticizing the prevalence of child-only TANF cases, *see* ECF No. 45-1, Mot. 9–10, and in furtherance of an executive order expressly designed to prevent "illegal aliens" from benefiting in any way from federal benefit programs, *id.* at 9.

The likelihood of such deterrence is in fact even stronger in this case than for prior policies because of the distinctive requirement here to disclose directly to TANF recipients that their personal information may be disclosed to DHS. If individuals were deterred from participation in programs similar to TANF without any requirement that they be informed of the risk to their personal information, surely some will be deterred from TANF participation when they are directly informed of the same risk.

Further, although such evidence is not required, the administrative record contains direct evidence that individuals will in fact respond to the Disclosure Actions in the way past precedent and logic suggest. The Legal Aid Society in New York has explained that "[t]he TANF SORN will make [its] clients reluctant to access TANF-funded benefits," an assessment it grounds in its deep "familiar[ity] with the ways in which potential immigration consequences of certain choices influence decisions made by [its] clients." Legal Aid Society Comment at 2, 4. Other organizations

that work directly with TANF beneficiaries make similarly informed predictions. *See, e.g.*, Comment of Voices for Vermont's Children, https://www.regulations.gov/comment/ACF-2026-0727-1331; Comment of Partners for Our Children, https://www.regulations.gov/comment/ACF-2026-0727-0006; Comment of Foster Kinship, https://www.regulations.gov/comment/ACF-2026-0727-0003. So do nearly two dozen state administrators of TANF programs. *See* ECF Nos. 45-7 to -37. Still further, a large number of *individuals* submitted comments objecting to the SORN on the ground that it will enable DHS to leverage TANF to support "a mass deportation program," and that "[p]eople who apply for TANF benefits . . . aren't volunteering to hand their information over to federal immigration enforcement agencies." *E.g.*, https://www.regulations.gov/comment/ACF-2026-0727-0514. Collectively, this evidence more than suffices—particularly at this preliminary stage—to establish a likelihood that the Disclosure Actions will chill participation in the TANF program.

Dated: September 25, 2026

Respectfully submitted,

**LETITIA JAMES**
Attorney General for the State of New York

By: */s/ Jessica Ranucci*
Jessica Ranucci
Mark Ladov
Stephen Thompson
*Special Counsel*
Rabia Muqaddam
*Chief Counsel for Federal Initiatives*
28 Liberty St.
New York, NY 10005
(929) 736-3392
jessica.ranucci@ag.ny.gov
mark.ladov@ag.ny.gov
stephen.thompson@ag.ny.gov
rabia.muqaddam@ag.ny.gov

*Counsel for the State of New York*

**BRIAN L. SCHWALB**
Attorney General for the District of Columbia

By: */s/ Mitchell P. Reich*
Mitchell P. Reich (1044671)
*Senior Counsel to the Attorney General*
Karthik Reddy (1048848)
*Special Assistant Attorney General*
Office of the Attorney General for the District of Columbia
400 Sixth St. NW
Washington, DC 20001
(202) 279-1261
mitchell.reich@dc.gov

*Counsel for the District of Columbia*

**ROB BONTA**
Attorney General of California

By: */s/ Camille Framroze*
Todd Grabarsky
Matthew Wise
*Supervising Deputy Attorneys General*
William Bellamy
Camille Framroze
Harald Kirn
Andrew Kushner
*Deputy Attorneys General*
455 Golden Gate Ave., Ste. 11000
San Francisco, CA 94102-7004
(415) 510-3619
Camille.Framroze@doj.ca.gov

*Counsel for the State of California*

**KRISTIN K. MAYES**
Attorney General for the State of Arizona

By: */s/ Luci D. Davis*
Luci D. Davis
Jaylia Yan (90007649)
2005 N. Central Ave.
Phoenix, AZ 85004
(602) 542-3333
Luci.Davis@azag.gov
Jaylia.Yan@azag.gov
ACL@azag.gov

*Counsel for the State of Arizona*

**PHIL WEISER**
Attorney General of Colorado

By: */s/ David Moskowitz*
David Moskowitz (994469)
*Deputy Solicitor General*
Reed W. Morgan
*Assistant Solicitor General*
1300 Broadway, 10th Fl.
Denver, CO 80203
(720) 508-6000
david.moskowitz@coag.gov

*Counsel for the State of Colorado*

**WILLIAM TONG**
Attorney General of Connecticut

By: */s/ Katherine Zdrojeski*
Katherine Zdrojeski
*Assistant Attorney General*
165 Capitol Ave.
Hartford, CT 06106
(860) 808-5210
Katherine.Zdrojeski@ct.gov

*Counsel for the State of Connecticut*

**KATHLEEN JENNINGS**
Attorney General of the State of Delaware

By: */s/ Vanessa L. Kassab*
Ian R. Lison
*Director of Impact Litigation*
Vanessa L. Kassab
*Deputy Attorney General*
Delaware Department of Justice
820 N. French St.
Wilmington, DE 19801

**ANNE E. LOPEZ**
Attorney General for the State of Hawaiʻi

By: */s/ Kalikoʻonālani D. Fernandes*
Kalikoʻonālani D. Fernandes
*Solicitor General*
425 Queen St.
Honolulu, HI 96813
(808) 586-1360
kaliko.d.fernandes@hawaii.gov

(302) 683-8899
vanessa.kassab@delaware.gov

*Counsel for the State of Delaware*

**KWAME RAOUL**
Attorney General of Illinois

By: */s/ Harpreet K. Khera*
Harpreet K. Khera
*Bureau Chief, Special Litigation*
Sherief Gaber
*Assistant Attorney General*
115 S. LaSalle St., 35th Fl.
Chicago, IL 60603
(773) 590-7127
Harpreet.Khera@ilag.gov
Sherief.Gaber@ilag.gov

*Counsel for the State of Illinois*

*Counsel for the State of Hawaiʻi*

**OFFICE OF THE GOVERNOR *ex rel.* ANDY BESHEAR**
In his official capacity as Governor of the Commonwealth of Kentucky

By: */s/ S. Travis Mayo*
S. Travis Mayo
*General Counsel*
Sam Flynn
*Chief Deputy General Counsel*
Laura C. Tipton
*Deputy General Counsel*
Office of the Governor
501 High St.
Frankfort, KY 40601
(502) 564-2611
travis.mayo@ky.gov
sam.flynn@ky.gov
laurac.tipton@ky.gov

*Counsel for the Office of the Governor*

**AARON M. FREY**
Attorney General for the State of Maine

By: */s/ Brendan Kreckel*
Brendan Kreckel
*Assistant Attorney General*
Office of the Attorney General
6 State House Station
Augusta, ME 04333-0006
(207) 626-8800
brendan.kreckel@maine.gov

*Counsel for the State of Maine*

**ANTHONY G. BROWN**
Attorney General of Maryland

By: */s/ Keith M. Jamieson*
Keith M. Jamieson (187911)
*Assistant Attorney General*
Office of the Attorney General
200 Saint Paul Place
Baltimore, MD 21202
(410) 576-6960
kjamieson@oag.maryland.gov

*Counsel for the State of Maryland*

**ANDREA JOY CAMPBELL**
Attorney General of Massachusetts

By: */s/ Michelle Pascucci*
Michelle Pascucci
*State Trial Counsel*
Jak Kundl
*Assistant Attorney General*
One Ashburton Pl.
Boston, MA 02108
(617) 963-2255
Michelle.pascucci@mass.gov
jak.kundl@mass.gov

*Counsel for the Commonwealth of Massachusetts*

**DANA NESSEL**
Attorney General of Michigan

By: */s/ Neil Giovanatti*
Neil Giovanatti
*Assistant Attorney General*
Michigan Department of Attorney General
525 W. Ottawa St.
Lansing, MI 48909
(517) 335-7603
GiovanattiN@michigan.gov

*Counsel for the State of Michigan*

**KEITH ELLISON**
Attorney General of the State of Minnesota

By: */s/ Lindsey E. Middlecamp*
Lindsey E. Middlecamp
*Special Counsel, Rule of Law*
445 Minnesota St., Suite 600
St. Paul, MN 55101
(651) 300-0711
lindsey.middlecamp@ag.state.mn.us

*Counsel for the State of Minnesota*

**AARON D. FORD**
Attorney General of the State of Nevada

By: */s/ K. Brunetti Ireland*
K. Brunetti Ireland
*Chief of Special Litigation*
Office of the Nevada Attorney General
1 State of Nevada Way, Ste. 100
Las Vegas, NV 89119
(702) 486-3420
kireland@ag.nv.gov

*Counsel for the State of Nevada*

**JENNIFER DAVENPORT**
Attorney General of New Jersey

By: */s/ Kashif T. Chand*
Kashif T. Chand
*Assistant Attorney General*
New Jersey Office of the Attorney General, Division of Law
124 Halsey St., 5th Fl.
Newark, NJ 07101
(973) 648-2052
Kashif.Chand@law.njoag.gov

*Counsel for the State of New Jersey*

**RAÚL TORREZ**
Attorney General for the State of New Mexico

By: */s/ Anjana Samant*
Anjana Samant
*Deputy Counsel*
New Mexico Department of Justice
408 Galisteo St.
Santa Fe, NM 87501
(505) 270-4332
asamant@nmdoj.gov

*Counsel for the State of New Mexico*

**DAN RAYFIELD**
Attorney General State of Oregon

By: */s/ Leanne Hartmann*
Leanne Hartmann
*Senior Assistant Attorney General*
Oregon Department of Justice
100 SW Market St.
Portland, OR 97201
(971) 673-1880
Leanne.Hartmann@doj.oregon.gov

*Counsel for the State of Oregon*

**JOSH SHAPIRO**
In his official capacity as Governor of the Commonwealth of Pennsylvania

By: */s/ Jacob B. Boyer*
Jennifer C. Selber
Jacob B. Boyer
Governor's Office of General Counsel
30 North 3rd St.
Suite 200
Harrisburg, PA 17101
(717) 831-2847
jacobboyer@pa.gov

*Counsel for Governor Josh Shapiro*

**PETER F. NERONHA**
Attorney General of Rhode Island

By: */s/ Marissa D. Pizaña*
Marissa D. Pizaña
*Special Assistant Attorney General*
150 South Main St.
Providence, RI 02903
(401) 274-4400
MPizana@riag.ri.gov

*Counsel for the State of Rhode Island*

**CHARITY R. CLARK**
Attorney General for the State of Vermont

By: */s/ Ryan Patrick Kane*
Ryan Patrick Kane
*Deputy Solicitor General*
109 State St.
Montpelier, VT 05609
(802) 828-3171
Ryan.kane@vermont.gov

*Counsel for the State of Vermont*

**JAY JONES**
Attorney General for the Commonwealth of Virginia

By: */s/ Megan C. Keenan*
Megan C. Keenan (1672508)
*Deputy Solicitor General*
202 North Ninth St.
Richmond, VA 23219
(804) 997-5222
mkeenan@oag.state.va.us

*Counsel for the Commonwealth of Virginia*

**NICHOLAS W. BROWN**
Attorney General of the State of Washington

By: */s/ Mina Shahin*
Mina Shahin
*Assistant Attorney General*
William McGinty
*Deputy Solicitor General*
800 Fifth Ave., Ste. 2000
Seattle, WA 98104
(206) 464-7744
Mina.Shahin@atg.wa.gov
William.McGinty@atg.wa.gov

*Counsel for the State of Washington*

**JOSHUA L. KAUL**
Attorney General of the State of Wisconsin
By: */s/ Faye B. Hipsman*
Faye B. Hipsman
*Assistant Attorney General*
Wisconsin Department of Justice
PO Box 7857
Madison, WI 53707-7857
(608) 264-9487
faye.hipsman@wisdoj.gov

*Counsel for the State of Wisconsin*